*Plaintiff nonsuit.*

JOSEPH M. GERRISH & al. versus PROPRIETORS OF UNION
WHARF.

The right to use the waters covering flats between high and low water marks
for the purposes of navigation, was not abridged by the ordinance of
1641, in reference to that subject; and owners of vessels exercised only
their legal right of navigation by passing over such flats, when covered by
water, and remaining upon them for commercial purposes from the ebb to
the flow of the tide.

The rightful use of one's own estate, whether covered by water or not,
may, not unfrequently, have some effect to diminish the value of an adjoin-
ing estate, or to prevent its being used with the comfort which might have
been otherwise anticipated. This, however, is *damnum absque injuria*
for which the law does not make compensation.

If individuals have acted unlawfully or injuriously in extending their wharf
into the water beyond low water mark, they may be amenable to the
sovereign power, but they cannot be called upon by those who have no
interest in the land covered by such wharf, to make compensation to
them for its use.

An agreement entered into concerning real estate, wherein certain recitals
and admissions are made in reference thereto, does not estop the party to
deny the truth of such recitals and admissions, saving for the accomplish-
ment of the purpose for which they were made, unless they become a part
of or work upon the title.

An executory agreement, never executed, does not estop a party to it from
acting in such manner as to violate its stipulations.

A person cannot be barred by an unsealed instrument by way of an estop-
pel, of his right to real estate, but only by deed or record.

By the colonial ordinance of 1641, (Ancient Charters, c. 63,) the title of the
proprietors of flats extended only to the ordinary low water mark, and not
to the place to which the tide ebbed, when from natural causes it ebbed the
lowest.

THIS was an action for use and occupation of a parcel of
flats and part of a wharf, from August 31st, 1842, to Dec. 31st,
1844. The general issue was pleaded and joined; and the
action was tried at the Nov. Term, 1846, TENNEY J. pre-
siding.

The plaintiffs, to show the extent of their claim, offered and introduced an agreement, for reference, made between the plaintiffs and the committee of the defendants, authorized by vote thereto, dated Dec. 3d, 1842; which agreement, it was conceded, had been executed, unless, so far as by the record and proceedings in a suit, a copy of which was introduced by the plaintiffs, appeared.

They also introduced in evidence the copy of a record of a former suit, reference, report, and judgment thereon in favour of the plaintiffs, against the defendants, at the November Term of this Court, 1843. This suit was to recover rent for the use of the same flats and part of a wharf, for the use of which the present suit is instituted. It was entered at Nov. Term, 1842.

The above evidence was objected to by the defendants, but was admitted.

It was also shown by the plaintiffs, that the question of rent for the use of the flats, which were in dispute between the parties, from the time of the final decision of the title thereto, had formerly been submitted to referees, who made their award, dated Dec. 23, 1831, that the proprietors of the wharf should pay $100, per annum therefor.

The plan referred to was introduced and exhibited to the jury but is not in the case. Also the writ of possession, &c. on a former recovery of the flats, in an action wherein the grantors of the plaintiffs and the defendants were parties. Also the deposition of Eleazer Wyer, taken in perpetuam. These were merely to be referred to, but made no part of the case.

The plaintiffs also introduced Samuel Chase, who testified, that from August, 1842, to December, 1844, vessels lay at Union Wharf as usual, and that the part claimed by the plaintiffs was as much used during that period as in former years. He also testified that vessels lying at the wharf above the notch in the capsill where the plaintiffs' line intersects it, must for some distance lie partly upon the plaintiffs' flats, and that vessels came and laid there as usual, during the time above mentioned. He also testified that in his opinion, the fair annual value of the

plaintiffs' flats and appurtenances was from seventy-five to one hundred and twenty-five dollars per year, including the piece of wharf upon them, and that the annual value of the piece of wharf was fifty dollars.

The defendants called William Merrill, who testified that he was wharfinger of Union Wharf, from 1837 to 1841, and kept a counting room upon the wharf until 1844 or 1845 ; that he often observed the tides during that time, took particular notice of them, and never knew the water at any time to be out below the stone pier ; and that the average tides did not ebb below the notch in the capsill.

They also called Alpheus Shaw, who testified that he had been the wharfinger since January, 1842 ; that he had taken particular notice of the tides, with a view to ascertain the time of low water mark, and had never known the water to be out so low down as the point where the plaintiffs' line strikes the wharf. That he had not taken dockage for vessels lying in whole or in part upon the plaintiffs' flats, but that he had taken wharfage as usual for vessels so lying at the wharf, including that part between the notch in the capsill and the end of the stone pier. He also testified on cross examination, that when goods are landed and put into the stores, and go away by land no wharfage is charged by the rules of the wharf ; and if they go away by water, that wharfage is charged but no dockage ; and that dockage is a charge against the vessel, and wharfage is a charge upon goods landed.

The defendant's counsel contended, that they were not liable for the use of the plaintiffs' flats above the notch, as the plaintiffs had no wharf there ; and that the plaintiffs could recover nothing for the use of the wharf, as the portion within the lines of their flats, was below low water mark.

The plaintiffs' counsel claimed, that they had a right to recover for the occupation of their flats, which were made use of by the defendants as appurtenant to their wharf, whether they collected dockage therefor, specifically or not. That the plaintiffs are entitled to recover for the use of such parts of the wharf as are within the line of their flats, whether below or

above low water mark. And that the true line of low water mark was that to which the tide ebbed when the lowest from natural causes.

But TENNEY J. presiding at the trial, instructed the jury, that the plaintiffs could recover nothing for the use of their dock by vessels lying and discharging at Union Wharf, whether they lay afloat, or upon the flats; and that if the jury should find the part of the wharf where the plaintiff's western line struck it, to be below the ordinary line of low water, they should find their verdict for the defendants. The Judge also put several questions, reduced to writing, to be answered by the jury, according as they should return their verdict. And he further instructed the jury not to regard the instrument of agreement dated December 5, 1842, as having any bearing upon the rights of the plaintiffs to recover in the case, on the ground of any admission or acknowledgment thereof, purporting to be contained therein; and upon which the plaintiffs insisted.

The defendants' counsel contended also, that nothing could be recovered for use of the flats above the notch in the wharf, in this action, and the Judge instructed the jury, that as there was no evidence tending to show, that there was anything received by the defendants for dockage as such, but as the evidence in the case upon that point was, that the defendants did not so receive it, the plaintiffs could recover nothing on that account.

The verdict was rendered for the defendants.

If the rulings and instructions of the Court, injurious to the plaintiffs, were materially erroneous, the verdict was to be set aside and a new trial granted.

The following is a copy of the paper, contended on the part of the plaintiffs to be an estoppel: —

" Whereas Joseph Noble of Boston and Joseph M. Gerrish of Portland, being owners in common of a strip of flats lying on the easterly side of, adjoining to and partly under Union Wharf in said Portland, as appears by a plan drawn by Edward Russell, Esq. taken by order of Court and used in an

action brought by Richard and Frederick A. Cobb against the Proprietors of said Union Wharf, to test the title to said property, being the same which is now owned by the said Noble and Gerrish. And whereas by the judgment of the Supreme Judicial Court, obtained on said suit, possession was given of said flats to the grantees of said Richard and Frederick A. Cobb, together with that part of said wharf which was then built, and now standing on the same, and now owned by said Noble and Gerrish as aforesaid. And whereas the proprietors of said wharf, after paying the rent of said property upon the report of referees to whom the question was submitted, up to January 1, 1832, have since neglected to pay the same and a suit has been brought by said Noble and Gerrish, to recover the rent of said property so owned by them as aforesaid, and improved by said proprietors. And whereas the said proprietors by their committee whose names are hereunto subscribed, have proposed to said Noble and Gerrish to have so much of their property as is hereinafter mentioned, united with the said Union Wharf property and to be made a joint stock ; and to create as many new shares in said corporation, and convey them to said Noble and Gerrish as shall be an equivalent for the advantages to be derived to said wharf property by the addition of said Noble and Gerrish property aforesaid : —

Now with a view of adjusting amicably said claim for rent and settling the whole matter upon just and fair principles, the parties have agreed, and do hereby agree to submit the whole matter to the judgment and determination of three disinterested and discreet men, which may be agreed upon for that purpose. The said referees to determine how many new shares shall be created and conveyed to the said Noble and Gerrish by said Corporation, as a fair equivalent for the said Noble and Gerrish's claim for back rent, and for their flats ; commencing opposite of, and on a parallel line with, the lower end of the block of stores numbered eleven, standing on said wharf and running southeasterly to the channel of Fore River, with that part of the wharf and stone pier standing thereon, with all rights and privileges thereto appertaining ; taking into

consideration the location and relative value of said property, and the advantages to be derived by the union thus to be made of the two parcels; each party to give the other a good and sufficient title in fee simple of the property to be conveyed. Dec. 5, 1842."

This paper was signed by the plaintiffs and by a committee of the defendants, authorized for that purpose, but not sealed.

It did not appear, that any referees were agreed on by the parties, in pursuance of that agreement.

*Questions proposed to the Jury by the presiding Judge.*

*Question.* — " Did the defendants use and occupy the flats described in the plaintiffs' writ, and which are *above* the point where the western line of the said flats strikes the wharf, from Aug. 31, 1842 to Dec. 31, 1844, or any part thereof?"

*Answer by the jury.* — " They did not."

*Question.* — " Does Union Wharf cover any portion of the plaintiffs' flats described in their writ, which is *above ordinary low water mark* ?"

*Answer.* — " It does not."

*Question.* — " Does Union Wharf cover any portion of the plaintiffs' flats described in their writ, which is *above low water mark, when the tide ebbs the lowest, by natural causes* ?"

*Answer.* — " It does not."

*Question.* — " Did the defendants use and occupy the flats described in the plaintiffs' writ, and which are *below* the point, where the western line of said flats strike the wharf, and which are not covered by the wharf, and which are *above ordinary low water mark* ?"

*Answer.* — " They did not."

*Question.* — " Did the defendants use and occupy the flats described in the plaintiffs' writ, and which are *below* the point where the western line of said flats strike the wharf and which are *above ordinary* low water mark ?"

*Answer.* — " They did not."

*Question.* — " Did the defendants use and occupy the flats described in the plaintiffs' writ, and which are *above* low water

mark *when the tide ebbs the lowest by natural causes*, instead of above ordinary low water mark ?"

*Answer.* — " They did not."

The Jury found no flats or erections thereon, belonging to the plaintiffs, were used by defendants.

*C. S. & E. H. Daveis* argued for the plaintiffs.

They contended, that if it were true, that the plaintiffs had not shown a title beyond low water mark to the flats, as it might regard others than the defendants, yet as it respected them, the title to flats, and a part of the wharf below that mark, is made out. As between these parties, the agreement fixes the low water mark ; and the defendants are estopped by that agreement to deny, that the plaintiffs had title to the part of the flats and wharf claimed by them. In that paper the respective rights of the parties are admitted ; and the admission of facts, although made for a compromise, create an estoppel on the defendants to deny such facts. *Dickinson* v. *Dickinson*, 9 Metc. 471 ; 1 Greenl. Ev. § 192.

The instructions of the Judge in relation to the low water mark were erroneous. They limited the extent " to the ordinary line of low water." By the ordinance of 1641, flats extend to where the tide ebbs the lowest from natural causes. This point was so decided in the case of *Sparhawk* v. *Bullard*, 1 Metc. 95.

We are entitled to recover our proportion of the dockage of the vessels, whether it was taken by the defendants by that name or not. They had the benefit of it ; and if they have received money's worth, they are liable.

*W. P. Fessenden*, for the defendants, said that the premises recovered in the action referred to, and writ of possession, extended only to low water mark. The plaintiffs, therefore, must show some principle upon which they can sustain their action without title.

The agreement to refer does not aid them. The recitals were of no force, unless as to the reference, if it had taken place. It blew up, because the corporation had no power by

its charter to purchase the property and make shares to pay for it. There was no question raised as to title in that agreement. Merely saying, in a paper not under seal, that property belonged to the plaintiff, did not make it theirs. There can be no estoppel, as to title, by such agreement.

The plaintiffs are mere strangers as to the property below low water mark. They have neither title nor possession. The defendants may do as they please, unless the right owners complain. *Deering* v. *Proprietors of Long Wharf*, 25 Maine R. 51.

The instructions respecting low water mark are correct.

Low water mark is the line of the margin of the water at ordinary low tides, and not at the lowest possible state of the water at some particular times from natural causes. The case, *Sparhawk* v. *Bullard*, cited and relied on by the counsel for the plaintiffs, stands alone, and opposed to all other authorities and to common sense. The remarks at the close of the opinion were not necessary for the decision of the case, and are erroneous. The only case cited to sustain it, *Storer* v. *Freeman*, 6 Mass. R. 435, is directly against the position; and so are 6 Cowen, 540, and note citing Hale's *De jure Maris*; 7 Conn. R. 186; 5 Day, 22.

But were it otherwise, the instruction would be wholly immaterial, and could not prejudice the plaintiffs, as the jury have found, that the defendants did not occupy any flats of the plaintiffs above low water mark.

The opinion of the Court, WHITMAN C. J. taking no part in the decision, having formerly had some agency with respect to the wharf, was drawn up by

SHEPLEY J. — The action is assumpsit, brought to recover compensation for the use and occupation of a strip of flats ground near Union Wharf, and also for the use and occupation of a part of that wharf, from August 31, 1842, to December 31, 1844.

The plaintiffs are admitted to be the owners of a strip of flats ground, extending from high water mark to low water

mark, near to which place the westerly line of the flats, being extended toward the channel of Fore river, would include a part of the wharf. For some distance from low toward high water mark the same line runs so near to the wharf, that vessels lying on the easterly side of the wharf must cover a portion of the flats. The testimony shews, that vessels approached the wharf on that side, and there remained to lade and unlade as usual during the time, for which the compensation is claimed. That the proprietors of the wharf claimed and received wharfage for goods landed from them, but did not claim or receive dockage for the vessels.

The right to use the waters covering flats between high and low water marks, for the purposes of navigation, was not intended to be abridged by the ordinance of 1641. The owners of vessels, which at certain times covered a part of the plaintiffs' flats, exercised only their legal right of navigation, by causing them to pass over those flats when covered by water, and to remain upon them for commercial purposes, from the ebb to the flow of the tide. With the exercise of this right the proprietors of the wharf do not appear to have interfered; or to have claimed any compensation from the owners of the vessels for such use of the flats. There is no proof, that the proprietors of the wharf have ever occupied those flats. Nor that they have authorized or induced others to do so, unless they may be considered to have done it by preparing the facilities for navigation and commerce, afforded by their wharf. The conveniences for these purposes, obtained by the erection of a wharf on their own land, although they may induce more vessels to pass over or to lie upon flats in the vicinity, than would otherwise be found there, afford no legal cause of complaint to the owners of the flats. The rightful use of one's own estate, whether covered by water or not, may not unfrequently have some effect to diminish the value of an adjoining estate, or to prevent its being used with the comfort, which might have been otherwise anticipated. This, however, is *damnum absque injuria*, for which the law does not, and cannot make compensation.

Gerrish *v*. Proprietors of Union Wharf.

The testimony shows, that the defendants had been required, formerly by an award of referees, and subsequently by a judgment recovered at law, to make compensation to the plaintiffs for the use of these flats ; but it does not prove, that any contract or arrangement existed between the parties during the time, for which compensation is now sought ; and it does not exhibit such a state of facts, that a promise to continue to make such compensation can be implied by law.

As the title to their flats, does not extend further toward the channel than to low water mark, the plaintiffs fail to show, that they have become the owners of any portion of the wharf which has been extended toward the channel, beyond that line. If the defendants by so doing have acted unlawfully or injuriously, they may be amenable to the sovereign power ; but they cannot be called upon by those, who have no interest in the land covered by this part of their wharf, to make compensation to them for its use.

Without controverting this position, the counsel for the plaintiffs contend, that the defendants are estopped by their agreement with the plaintiffs, made on December 5, 1842, to deny, that the plaintiffs by certain former proceedings have become the owners of a part of that wharf. That agreement was made with the plaintiffs by a committee of the proprietors for an adjustment of all differences between them by the union of their respective estates, upon certain terms contained in the agreement and to be ascertained by referees. The proprietors at a legal meeting, holden in the month of January following, authorized their committee to carry that agreement into effect ; but this was not done, and no further proceedings by virtue of it, ever took place. By that agreement the plaintiffs' flats are described as commencing " opposite of and on a parallel line with the lower end of the block of stores numbered eleven, standing on said wharf, and running southeasterly to the channel of Fore River with that part of the wharf and stone pier, standing thereon." This recital and admission of the plaintiffs' title would have operated to estop the defendants from denying it for the execution of the purpose contemplated

by that agreement. But it can not thus operate beyond its design, and for all other purposes. It did not become a part of, or work upon the title. The doctrine, that one is bound by an estoppel, when it does not become a part of, or work upon the title, only for the accomplishment of the purpose, for which the fact was admitted, will be found in many decided cases.

If an executor permit judgment to be entered against him, it is an admission of assets, and on *devastavil* returned, he is estopped to deny it. But he is estopped for the purposes of that suit only. *Rock* v. *Leighton,* Salk. 310. *Ruggles* v. *Sherman,* 14 Johns. R. 446.

If a judgment be obtained against persons as partners, they will thereby be estopped to deny the partnership, but only to accomplish the purposes of that suit. *Lord* v. *Baldwin,* 6 Pick. 348.

If one by deed indented, accepts a lease of his own land as the land of another, he is thereby estopped to deny it to be the land of the other, only to accomplish the purposes of that lease. 4 Co. 54; Co. Lit. 47, *b.*

When an estoppel does and does not become a part of the title, or work upon the interest in land, may be illustrated by a couple of cases. If a tenant in a writ of entry plead the general issue, he thereby admits himself to be tenant of the freehold, and is estopped in that action, and for that purpose only, to deny it. *Kelleran* v. *Brown,* 4 Mass. R. 443. While if he plead a disclaimer, he will thereby admit, that he has no title, and will forever afterward, and under all circumstances, be thereby estopped to deny it, because the disclaimer becomes a part of the title, and works upon the interest in the land.

There are other grounds also, upon which the defendants will not be estopped by that agreement to deny, that the plaintiffs do not own any part of the wharf extending beyond low water mark. That was but an executory agreement never executed. Such an agreement does not estop a party to it, from acting in such a manner as to violate its stipulations. *Gibson* v. *Gibson,* 15 Mass. R. 106. That was not a sealed agree-

ment; and one cannot be barred by an estoppel of his right to an estate, but by deed or record. *Whitney* v. *Holmes,* 15 Mass. R. 152.

The counsel for the plaintiffs further contend, that the jury were erroneously instructed, if they " should find the part of the wharf, where the plaintiffs' western line struck it, to be below the ordinary line of low water, they should find their verdict for the defendants." These instructions in effect declared, that the plaintiffs' title to the flats extended by the ordinance only to the ordinary low water mark, and not to the place, to which the tide ebbed, when from natural causes it ebbed the lowest. The ordinance declares, that the proprietors of lands " shall have propriety to the low water mark." It evidently contemplates and refers to a mark which could be readily ascertained and established ; and that, to which the tide on its ebb usually flows out, would be of that description. That place, to which the tide might ebb under an extraordinary combination of influences and of favoring winds, a few times during one generation, could not form such a known boundary, as would enable the owner of flats to ascertain satisfactorily the extent, to which he could build upon them. Much less would other persons, employed in the business of commerce and navigation, be able to ascertain with ease , and, accuracy, whether they were encroaching upon private rights or not, by sinking a pier or placing a monument. It would seem to be reasonable, that high and low water marks should be ascertained by the same rule. The place, to which tides ordinarily flow at high water, becomes thereby a well defined line or mark, which at all times can be ascertained without difficulty. If the title of the owner of the adjoining land were to be regarded as extending, without the aid of the ordinance, to the place to which the lowest neap tides flowed, there would be found no certain mark or boundary, by which its extent could be determined. The result would be the same, if his title were to be limited to the place, to which the highest spring tides might be found to flow. It is still necessary to ascertain his boundary at high water mark in all those places,

where the tide ebbs and flows more than one hundred rods for the purpose of ascertaining the extent of his title toward low water mark. It is only by considering the ordinance as having reference to the ordinary high and low water marks, that a line of boundary at low water mark becomes known, which can be satisfactorily proved, and which having been once ascertained will remain permanently established.

Sir Matthew Hale, in his treatise *de Jure Maris* c. 4, says, " the shore is that ground, that is between the ordinary high and low water mark." He remarks also, "it is certain that, that which the sea overflows, either at high spring tides or at extraordinary low tides, comes not as to this purpose under the denomination of *littus Maris*, and consequently the King's title is not of that large extent, but only to land, that is usually overflowed at ordinary tides." This treatise has been received by judicial tribunals and by distinguished jurists, both during the earlier and later days of the law, with unqualified approbation and commendation. Vide the note to the case of Exparte Jennings, 6 Cow. 536. The rule, as therein stated, appears to have been received with approbation in the cases of *Storer* v. *Freeman*, 6 Mass. R. 435, and *Commonwealth* v. *Charlestown*, 1 Pick. 180. In the case of *Sparhawk* v. *Bullard*, 1 Metc. 95, low water mark was considered to be at that place, to which the tide ebbed, when from natural causes it ebbed the lowest. No authority is there cited, or reason stated for this difference of opinion. The former conclusions appear to be more in accordance with reason and authority.

The instructions on this point must be regarded as correct ; but if they could be otherwise regarded, the plaintiffs do not appear to have been aggrieved by them ; for the jury found, that the defendants did not occupy the flats "which were above low water mark, when the tide ebbs the lowest by natural causes."

*Judgment on the verdict.*