## JAMES D. MATTHEWS *vs.* JAMES M. TREAT.

### Waldo.    Opinion February 15, 1884.

*Fishing privilege.    Pleadings.    "Close."    Amendment.*

The owner of the soil between high and low water mark has the exclusive right to catch fish by means of fixtures attached to such soil. This right he may convey with or without the upland and with such limitations and qualifications as he sees fit.

The owner of an exclusive right to catch fish by means of fixtures attached to the soil within certain limits may maintain an action of the case for damages sustained against one who infringes upon that right by erecting upon or attaching to the soil like fixtures within the prescribed limits.

In such an action where the declaration was technically that of trespass *q. c.* charging that the defendant "with force and arms broke and entered the plaintiff's close," followed by a description of the premises, *Held*; that using the word "close" in its more comprehensive sense as indicated here by the words "fishery and fishing privilege" following, is not entirely inappropriate in an action on the case, and as the person and case could be rightly understood an amendment if necessary would be allowed.

ON REPORT.

An action to recover damages for infringing upon the plaintiff's exclusive right of fishing within certain limits on the southerly side of Cape Jellison in Stockton. The writ was dated March 25, 1882.

### (Declaration.)

"In a plea of trespass for that the said defendant on the first day of April, A. D. 1880, now last past, and on divers days and times between that day and the date of this writ with force and arms broke and entered the plaintiff's close, fishery and fishing privilege, situated in said Stockton on the southerly side of Cape Jellison, beginning on the south-easterly and up-river corner of plaintiff's homestead lot on the Penobscot bay in said county, on the shore of said bay, and extending by the shore of said bay, down said bay one hundred and fifty rods westerly and southerly

to the southernmost extremity of Squam Point Ledge (so called) with the exclusive right of taking salmon, shad and alewives on said premises, and of all the privileges necessary to carry on said fishery, on which premises near the up-river line of the same the plaintiff has annually erected his fish weirs and used them in taking said three kinds of fish, worth to him annually net two hundred dollars a year, without defendant's interference, and the said defendant well knowing the same, and intending to injure and destroy the plaintiff's said business and to convert the same to his own use and benefit, with force and arms aforesaid and against the plaintiff's remonstrance then and there broke, erected and maintained during the whole fishing season each year a close, built two substantial fish weirs, each year aforesaid, extending from the shore fifty rods and more into the bay aforesaid at or near a big rock just far enough below and down river of the plaintiff's weir to catch all or nearly all the said fish, which would have been caught in the plaintiff's weir, but for the said erection and maintenance of the said defendant's fish weir on said plaintiff's privileges used by him as aforesaid for the purpose of destroying said plaintiff's fishing business, and driving him out of the business and converting the same to his own use.

"Also for that the said defendant on the first day of April, A. D. 1880 and 1881, and on divers days and times between that time and the date of this writ with force and arms broke and entered the plaintiff's close and fishing privilege aforesaid at Stockton aforesaid, and then and there erected and maintained on said plaintiff's fishing privilege during all said fishing seasons two fish weirs, each year, on the up-river side of the southernmost extremity of Squam Point Ledge (so called) or near the southern line of said plaintiff's premises but within his boundary and on his premises, in which weirs said defendant caught a large amount of salmon, shad and alewives, last aforesaid seasons, that would but for said defendant's weir have come into and been caught in said plaintiff's weir built by him the said years on his own premises aforesaid and up-river and above said defendant's said weir.

"And the plaintiff avers that said defendant wilfully and wickedly built and maintained said weirs on plaintiff's said premises for the express purpose of destroying his fishing business and thereby depriving him of the value of said premises, and threatens to continue to so destroy said plaintiff's fishing business, in future of said plaintiff. To the damage of said plaintiff as he says, in the sum of four hundred dollars."

*A. G. Jewett*, for the plaintiff, cited: *Duncan* v. *Sylvester*, 24 Maine, 482; *Treat* v. *Strickland*, 23 Maine, 234; *Rex* v. *Oldanlesford*, 1 T. R; Eastman's Dig. 353; Angell, Watercourses, (2 ed.) 182-186; *Storer* v. *Freeman*, 6 Mass. 439; *Lapish* v. *Bangor Bank*, 8 Maine, 85.

*Thompson and Dunton*, for the defendant.

By the express terms of his deed, Treat acquired title on Penobscot bay below high water mark, and by operation of law his title would be extended to low water mark. Colonial Ordinance of 1641; Ancient Charters, c. 63, of Colony Laws; *Pike* v. *Monroe*, 36 Maine, 309; *Parker* v. *Cutler Milldam Co.* 20 Maine, 353; *Winslow* v. *Patten*, 34 Maine, 25.

At best, the deeds through which plaintiff claims only convey an easement in the shore of the land, of which defendant has the fee.

An action of trespass *quare clausum fregit* does not lie for an injury to an incorporeal right or easement. Hilliard on Torts, 612; *Morgan* v. *Boyes*, 65 Maine, 124.

The right of fishing in the sea, and in the bays and arms of the sea, and in navigable and tide waters, is a right public and common to every citizen; and if any individual will appropriate an exclusive privilege in navigable waters, and arms of the sea, he must show it strictly by grant or prescription. *Preble* v. *Brown*, 47 Maine, 284; *Parker* v. *Cutler Milldam Co.* 20 Maine, 353; Angell on Tide Waters, 22, 23, 24; *Moulton* v. *Libbey*, 37 Maine, 472; Colonial Ordinance of 1641; Ancient Charters, c. 63 of Colony Laws, § 2; *Weston* v. *Sampson*, 8 Cush. 347; *Proctor* v. *Wells*, 103 Mass. 216; 3 Kent's Com. 413.

The right of fishing in the sea, and bays, and arms of the sea, and in navigable and tide waters being *prima facie,* a public right, common to all citizens, it follows that only the sovereign power, the legislature in this country, can grant any special or exclusive right to an individual. Angell on Tide Waters, c. 6, p. 102; *Barrows* v. *McDermott,* 73 Maine, 441; 2 Blackstone's Com. 39; *Parker* v. *Cutler Milldam Co.* 20 Maine, 353.

Plaintiff has shown no such grant, nor has he shown any exclusive right by prescription. *Preble* v. *Brown,* 47 Maine, 284.

DANFORTH, J. In this action the plaintiff claims damages for a disturbance of his alleged right of fishery, the limits of which are fully described in the writ. The place is located upon an arm of the sea where the tide ebbs and flows.

The defence besides the general issue, is a denial of the plaintiff's and a claim of title in the defendant, that the right claimed by the plaintiff is a public right, that whatever the defendant has done, was in the exercise of that right and that the plaintiff did not have the exclusive right of taking fish as described in his writ. Thus the defence is put upon two grounds; that of title in himself exclusively and a general right in the public, or a free fishery.

That the public have the right of fishing in all tide waters, by the common law is too well settled to admit of denial. *Moulton* v. *Libbey,* 37 Maine, 472; *Weston* v. *Sampson,* 8 Cush. 347; *Proctor* v. *Wells,* 103 Mass. 216. Thus the defendant as a part of the public and in common with all other persons, would have the right to take fish not only from the deep waters adjacent to the flats described, but also from the water over the flats at flood tide. The fish swimming in the water above, as well as below low water mark, are the property of the first taker whether he has or has not an interest in the soil under the water where they are taken. This right resting in the public can be conveyed only by the public, or the sovereign power which represents the public and can be exercised only by such ordinary methods as will not interfere with private rights.

Since the ordinance of 1641, modified by that of 1647, which is a part of the common law of this state, (*Barrows* v. *McDermott*, 73 Maine, 441) the flats not exceeding one hundred rods in width are the property of the owner of the adjacent upland, or his grantee, subject to the rights of the public to pass over and fish in the waters upon them. This private ownership must necessarily give to the proprietor some privileges which do not belong to the public. Among others is the right of erecting fixtures thereon or attaching them to the shores. Hence while the proprietor of the flats may fasten his seine by grappling to the shore and erect weirs for the purpose of catching fish, those having public rights only cannot do so. *Duncan* v. *Sylvester*, 24 Maine, 482-486; *Locke* v. *Motley*, 2 Gray, 265. This being a private right may, of course, be conveyed by the owner with or without the upland and with such limitations and qualifications as he sees fit. This principle of law was recognized and adopted in a case from Sagadahoc county not yet reported. [*Wyman* v. *Oliver*, *ante*, p. 421, Reporter.]

It is an infringement of this private right, the erection of a weir upon or attached to the flats or shore which is here complained of. Thus the public right of fishery is not involved in this case. The only question at issue is whether the defendant has wrongfully erected a weir within an exclusive right of fishery belonging to the plaintiff.

That each party has a weir or weirs plainly appears from the report of the case. The plaintiff alleges that he has the exclusive right of fishing for salmon, shad and alewives within certain limits described in his writ and that the defendant has erected his weir within those limits and thereby interfered with his privilege. This exclusive right if it exists, is not derived from the sovereign power and must therefore grow out of and in its origin be incidental to an ownership in the flats. In other words it must be confined to a right to catch the fish named by means of fixtures attached to the soil and the interference must be by a wrongful attachment of fixtures to the soil for the same purpose. This directly presents the issue of title claimed by each party and by each traced through mesne conveyances to the same source.

It appears that Josiah Grant was formerly the owner of the upland and of the flats described as incidental thereto. In 1841, Mr. Grant, by a deed of warranty, conveyed to Giles C. Grant, "all the right of taking salmon, shad and alewives, on the southeasterly side of Cape Jellison in said Prospect, beginning at the shore on the southerly line of land of John and Charles Staples, and extending westerly to the southernmost extremity of Squam Point Ledge, so called, together with *all the privileges necessary* for carrying on the said fishing. This deed would necessarily give the exclusive right to catch the fish named within the limits described, by means of fixtures attached to the flats or shore. It could give no more as the grantor had no more to give. *Preble* v. *Brown*, 47 Maine, 284.

This privilege came to the plaintiff through the deeds of Giles C. Grant to Charles Staples and of Robert F. Staples as the representative of Charles. It is true that in the last two deeds the word "all" is not used before the words "the right of taking salmon," &c. But it is also true that the right is conveyed with the same description as in the first with no words to limit or qualify it, and when a thing is thus conveyed we cannot infer that but a part of it is intended.

The defendant claims title to the fishing privilege as incidental to a title to the upland which he obtains by virtue of a will from the same Josiah Grant and mesne conveyances to himself. But in these several conveyances the fishing privilege is not described or alluded to and as it had previously been conveyed he evidently obtains no title to that.

It is further contended that whatever the liability of the defendant it cannot be enforced in this form of action. If this is to be considered an action of trespass *q. c.* the objection would seem to be well founded. For although the title of the plaintiff is to an exclusive right to catch certain fish named within certain well defined limits, a right which is incidental to and grows out of an ownership in the soil, yet the grant does not carry the soil with it. Whether other kinds of fish may or may not be caught there does not appear. But there are other uses to which the

land may be put and which are not conveyed. The title to the soil therefore remained in the grantor and the conveyance was that of an easement, the remedy for an injury to which is case and not trespass *q. c. Duncan* v. *Sylvester, supra* ; Washburn on Easements, 3 ed. *420 ; *Morgan* v. *Boyes*, 65 Maine, 124.

The beginning of each count in the declaration, alleging that the defendant " with force and arms broke and entered the plaintiff's close " is technically that of trespass *q. c.* especially followed as it is by a description of the premises, and yet using the word " close " in its more comprehensive sense as indicated here by the words " fishery and fishing privilege " following, it is not entirely inappropriate here, in an action on the case. The fishery is one that may properly be denominated territorial. It covers certain described premises though it may not carry any interest in or title to the soil. The complaint is for entering upon the described premises for a special purpose, which is a violation of the plaintiff's alleged rights and taking the whole of either count in the declaration together we find all the facts set out upon which the plaintiff relies to support his action. It is a statement of the plaintiff's " own case " which is the distinguishing characteristic of an action on the case. *Hathorn* v. *Calef*, 53 Maine, 476-7. Thus the action is virtually if not really an action on the case and the facts are so fully stated that " the person and case can be rightly understood" and if necessary an amendment would be allowed. R. S., c. 82, § 9 ; *Hathorn* v. *Calef, supra*, 478.

Another objection raised in defence, is that the plaintiff does not show that his own weir is within his defined limits. Assuming this to be true, it would not affect his right to maintain this action though it might have a material effect upon the amount to be recovered. His title to the fishery described is the same whether he occupies or not ; but his damages might and from the declaration we may suppose they do very largely depend upon that fact. Upon an examination of the report, we find ourselves unable to fix the location of the plaintiff's weir. When a witness testifying from a plan, points out the location upon that plan, it may be sufficient to show to those present whether

the place is within certain limits. But such testimony cannot be taken by the reporter and necessarily the report of the case gives no light in regard to it. The plan is not before us, and if it were, we do not and cannot have the witness to explain. We are therefore unable to decide whether the plaintiff is entitled to recover more than nominal damages.

It is further claimed that the testimony shows that the defendant's weir, of which complaint is made, was built below low water mark, and there is some evidence which tends to sustain that view. If this were so it would be fatal to the plaintiff's action. If he did not use the flats or the shore for the purpose of erecting, fastening or using his weir, he did not interfere with the plaintiff's exclusive rights ; but in deep water he would have the same rights as other persons and any interference with others must be decided upon principles of law not involved in this case. But the plaintiff testifies that the defendant's weir was built both upon the flats and in deep water, and though we find the same difficulty to some extent that exists in regard to the plaintiff's weir, yet we infer from this statement that the weir was at least attached to the shore and thus to some extent an invasion of the plaintiff's exclusive right. We come to this conclusion the more easily from the fact that if not true, the error was susceptible of demonstration with the plan and witness to explain.

Thus the plaintiff would be entitled to nominal damages. From the testimony as reported, we find no ground for ordering more. But the counsel claims that the case shows a very much larger sum "under the agreement." We are unable to find such a showing. The plaintiff testifies that the fishery in dispute was worth one hundred dollars a year, "that in his weir he averaged one hundred salmon a year before Treat built there." This however gives us but little light inasmuch as it does not appear that his weir was located within the prescribed limits, or that defendant's weir in any way kept any fish from him. But as a portion of these facts at least must be well known to the parties and susceptible of full proof, to avoid the danger of

injustice, the action should be defaulted and stand for the assessment of damages.

*Action defaulted, damages to be
assessed at nisi prius.*

PETERS, C. J., WALTON, BARROWS and LIBBEY, JJ., concurred.