OLIVER C. DONNELL, and another,
*vs.*
CURTIS R. JOY, and another.

Hancock.    Opinion November 8, 1892.

*Fish.    Waters.    Weirs.    R. S., c. 3, § 63; Stat. 1885, c. 334.*

By R. S., c. 3, § 63, no fish weir shall be erected in tide waters "below low water mark" in front of another's shore or flats without his consent, under a penalty of fifty dollars, to be recovered in an action of debt.

Below low water mark in front of another's flats in a bay, does not necessarily mean that the soil in which the offending weir is erected shall be under water at all stages of the tide; but it may become the subject of the penalty if erected on public flats situated "beyond" or nearer the middle of the channel than the low water line of the private flats intended to be protected.

The State has authority over fisheries so far as the public and common rights are concerned.

ON EXCEPTIONS.

The case appears in the opinion.

*Wiswell and King*, for plaintiffs.

*B. T. Soule*, for defendants.

VIRGIN J.    Action of debt to recover the penalty prescribed in R. S., c. 3, § 63, as amended by stat. 1883, c. 334, for erecting and maintaining in tide waters a weir alleged to be "below low water mark in front of the shore or flats of the plaintiffs, without their consent."

It is not disputed that the plaintiffs own the section of flats on which their weir is located, down to low water mark, on the south side of Hog Bay, and that the defendant did not, but the State did own the soil on which the defendants' weir was situated.

The defendant admits his weir to be "in front of the plaintiffs' shore or flats," and that it was erected there, "without their consent." But he contends that it is not situated within the locality described by the statutory phrase, — "below low water mark" inasmuch as it is on land which is exposed at low water; and that to be subject to the penalty it should be attached to land from which the tide does not wholly recede — or in other words "under" or "beneath" the water.

To be sure, these definitions accord with those given by lexicographers ; but in seeking for the intention of the legislature, courts are not necessarily confined to exact synonyms of words or to the accurate definitions given by lexicographers (*Smith* v. *Chase*, 71 Maine, 164) ; but the object which the lawmakers had in view, the mischief sought to be remedied together with the remedy itself are to be considered (*Winslow* v. *Kimball*, 25 Maine, 493) as well as the common use of the words of the statute when applied to its subject matter. *Opinion of the Judges*, 7 Mass. 524.

In turning through the elementary books and the reports of decisions, relating to tide waters, for the purpose of ascertaining the common acceptation of the word "below" in the phrase in question, it is almost invariably found to be used synonymously with "beyond." Among the numerous instances is the case of *Gerrish* v. *Propr's of W. Wharf*, 26 Maine, 384, in which the reporter, in his head note, the accomplished counsel for the plaintiffs, and SHEPLEY, J., in the opinion of the court, all used the word "beyond" low water mark.

Moreover, it is made morally certain that the Legislature adopted the same use when their object in view, the mischief to be remedied and the remedy applied, are considered.

The plaintiff owned his flats down to low water mark, as land and not a mere easement therein. *Com.* v. *Alger*, 7 Cush. 53, 70-81 ; *Parker* v. *Cutter M. D. Co.* 20 Maine, 353 ; *Lowe* v. *Knowlton*, 26 Maine, 128. As an incident of such ownership he had the exclusive right to erect a fish weir thereon. *Duncan* v. *Sylvester*, 24 Maine, 482 ; *Matthews* v. *Treat*, 75 Maine, 597. Within its limits, the State owned the land under the sea below low water mark as well as the flats on which the defendants' weir was located, and had the authority to regulate the time and manner of the taking of fish by the public in the waters thereon. *Sparhawk* v. *Bullard*, 1 Met. 95 ; *Gray* v. *Bartlett*, 20 Pick. 186 ; *Duncan* v. *Sylvester*, *supra* ; *Matthews* v. *Treat*, *supra*. If one of the public could erect a weir so immediately in front of the owner's flats as to naturally obstruct fish in their habitual passage with the flow and ebb of the tide to the latter's weir, it

would be of but little value. The former's weir might as well be placed alongside of the latter's. And it would make but slight if any difference whether the obstructing weir be on land permanently or periodically submerged by the tides.

In view of such an obvious mischief, and for the purpose of protecting the owner of flats in the full, practicable enjoyment of his proprietary rights, the Legislature took the subject matter in hand, and provided, among other things, in substance that no one of the public should, upon land whether constantly or periodically overflowed by the tides, in which he had no proprietary interest but over which the State had control, plant a weir the natural operation of which would interfere with the rights of owners of flats. And to make the statute efficient a penalty of $50 for each offense (statute 1885, c. 334) was provided, not, however, in the nature of a *qui tam* remedy — giving the penalty in part to whomsoever would sue therefor (Bouv. L. D.),—but wholly to the owner as a compensation for the injury to his proprietary rights. Statute 1883, c. 334.

Moreover, the defendant had no right to erect any weir upon the land where it is. He did not own it. There is no pretense that he ever made any application for or obtained any license in accordance with the provisions of statute of 1876, c. 78, incorporated into R. S., c. 3, §§ 60, 61, 62 ; without which no fish weir could be erected or maintained. R. S., c. 3, § 63.

2. But exception is taken to the instruction in relation to the plaintiffs' right to have fish come to their weir unobstructed by any weir that might be erected in front of their shores or flats, which materially interfered with their rights, &c. We perceive no prejudicial error in this instruction,— for it was simply giving to the jury the spirit and intended effect of the statute in question to which it was confined. It in nowise conflicts with the doctrine enunciated in *Matthews* v. *Treat, supra*, which discussed the common law rights of owners of flats. In the same connection the jury were further instructed that, if the defendants' weir did not materially interfere with the plaintiffs' rights, then this action could not be maintained ; and the jury found that it did,— the correctness of which finding is not challenged by any motion on the part of the defendants.

The two provisos relating to the "obstruction of navigation' and the "interference with the rights of others," which in the revision as appended to R. S., c. 3, § 63, were originally applied only to "weirs extended by owners of flats, bordering on the sea, into tide waters below low water mark" (St. 1883, c. 239, § 3, incorporated in R. S., c. 40, § 26), and not the unqualified penal provisions of St. 1883, c. 239, § 2, upon which this action is now founded. But the committee on revision to incorporate the public laws of 1883 with the new revision, applied those provisos to both sections (R. S., c. 40, § 26, and R. S., c. 3, § 63), and they so stand now. But as the jury settled the fact of interference, we have no occasion to express an opinion whether or not the provisos affect the construction of c. 3, § 63.

We need not allude to the question of constitutionality suggested but not argued. There is no doubt that the State has authority over the whole subject matter, so far as the public and common rights are concerned. *Barrows* v. *McDermott*, 73 Maine, 450.                              *Exceptions overruled.*

PETERS, C. J., LIBBEY, FOSTER, HASKELL and WHITEHOUSE, JJ., concurred.