2011 ME 16

**Robert W. BRITTON et al.**

v.

**Daniel P. DONNELL et al.**

Supreme Judicial Court of Maine.

Argued: Sept. 15, 2010.

Decided: Feb. 8, 2011.

Gerald F. Petruccelli, Esq. (orally), Bruce A. McGlaurlin, Esq., Petruccelli, Martin & Haddow, LLP, Portland, ME, for Robert W. Britton and Eleanor F. Britton.

Mark G. Furey, Esq. (orally), Thompson, Bull, Furey, Bass & MacColl, LLC, Portland, ME, for Daniel P. Donnell and the Donnell Realty Trust.

Panel: SAUFLEY, C.J., and LEVY, SILVER, MEAD, GORMAN, and JABAR, JJ.

SILVER, J.

[¶ 1] This is the second appeal in a dispute between adjacent owners of shore-front land in York Harbor. *See Britton v. Dep't of Conservation (Britton I )*, 2009 ME 60, 974 A.2d 303. In *Britton I*, we held that if a wharf extending in front of the tidal flats of adjacent property injures the adjacent landowners' enjoyment of their riparian rights, the Wharves and Weirs Act, 38 M.R.S. § 1026 (2010),[1] affords them a remedy. 2009 ME 60, ¶ 25, 974 A.2d at 310. On remand, the Superior Court (York County, *Brennan, J.*) determined that the wharf does not injure the

---

1. The Wharves and Weirs Act states, in relevant part:

No fish weir, trap or wharf shall be extended, erected or maintained except in accordance with this chapter. No fish weir, trap or wharf shall be erected or maintained in tidewaters below low-water mark in front of the shore or flats of another without the owner's consent, under a penalty of $50 for each offense, to be recovered in a civil action by the owner of said shore or flats.

38 M.R.S. § 1026 (2010).

adjacent landowners and therefore they have no remedy under the statute. We vacate the judgment.

## I. FACTUAL AND PROCEDURAL HISTORY

[¶ 2] The facts and procedural history are set forth in full in *Britton I*, 2009 ME 60, ¶¶ 4–11, 974 A.2d at 305–07. In brief, Daniel P. Donnell and the Trustees of the Donnell Realty Trust (Donnells) own land on the York River consisting of two parcels located on either side of a parcel owned by Robert W. Britton and Eleanor F. Britton. *Id.* ¶¶ 1, 4, 6 & n. 3, 974 A.2d at 305–06.[2] The Donnells own and operate two wharves, one on each of their two parcels. *Id.* ¶ 5, 974 A.2d at 306. At issue is Varrell Wharf; Simpson Wharf is not at issue because it does not extend beyond Daniel Donnell's property, and because he has the right by deed to maintain that wharf. *Id.* ¶ 1 & n. 1, 974 A.2d at 305.

[¶ 3] Part of Varrell Wharf extends forty-eight feet across the Brittons' frontage, leaving at most a forty-one-foot gap between Varrell Wharf and Simpson Wharf. *Id.* ¶¶ 5–6, 974 A.2d at 306. When boats are docked at both Simpson Wharf and Varrell Wharf, this gap is even narrower. *Id.* ¶ 6, 974 A.2d at 306. The section of Varrell Wharf that extends across the Brittons' frontage was built between 1950 and 1955. *Id.* ¶ 5, 974 A.2d at 306. The Brittons' predecessor in title neither objected nor expressly consented to Varrell Wharf. *Id.* The Brittons bought their property in 1975 and have not consented to the continued operation of Varrell Wharf *Id.* ¶¶ 4, 23, 974 A.2d at 305–06, 310. The Brittons brought this action in 2005 after the Donnells entered into a lease with the State to continue occupying the submerged land under Varrell Wharf. *Id.* ¶ 7, 974 A.2d at 306.

[¶ 4] In *Britton I*, we held that the Superior Court erred when it applied the Submerged and Intertidal Lands Act, 12 M.R.S. § 1862(2)(A)(6) (2009),[3] to the private dispute between the Brittons and the Donnells. 2009 ME 60, ¶¶ 2–3, 974 A.2d at 305. We held:

> In order to determine whether Varrell Wharf constitutes a violation of the Wharves and Weirs Act, the court must consider all relevant facts and then decide whether the wharf is so situated or so near the shore of the Brittons' property as to injure or injuriously affect the Brittons in the enjoyment of their riparian rights.

*Id.* ¶ 25, 974 A.2d at 310 (quotation marks omitted). We also remanded for consideration of the Donnells' affirmative defenses and for a hearing and fact-finding on the Brittons' nuisance claims. *Id.* ¶¶ 26–27, 974 A.2d at 310. The Brittons have since waived their nuisance claims.

[¶ 5] On remand, the court reasoned that the Brittons are not injured because (1) the configuration of the land as tidal flats makes a pier or wharf necessary for accessing navigable waters, and the Brittons could not have a wharf due to the current zoning ordinance; (2) there is no accompanying physical trespass on the upland property; and (3) the wharf has been there since the 1950s, long before the Brittons bought their property. The court also held in favor of the Donnells on the alternative ground that they obtained ri-

---

2. The Brittons assert that they are the beneficial owners and that legal title is held by Eleanor F. Britton and Frederick D. Ballou, Trustees of the Eleanor F. Britton Trust.

3. Title 12 M.R.S. § 1862(2)(A)(6) (2009) has since been amended, but not in any way that affects this appeal. *See* P.L.2009, ch. 615, § B–1 (effective April 7, 2010) (codified at 12 M.R.S. § 1862(2)(A)(6) (2010)).

parian rights to a portion of the Brittons' frontage pursuant to the doctrines of prescription and abandonment. The court held in favor of the Brittons on the Donnells' defenses of laches and estoppel.

## II. DISCUSSION

[¶ 6] The parties do not contest any findings of fact on appeal, and therefore we review de novo for errors of law the court's determinations that Varrell Wharf does not injure the Brittons and the Donnells' maintenance of the wharf does not violate the Wharves and Weirs Act, 38 M.R.S. § 1026. *See Rodriguez v. Town of Moose River*, 2007 ME 68, ¶ 29, 922 A.2d 484, 492. The rights of landowners in relation to tidal shoreline are derived from both the common law and statute and have historically differed depending on which of three zones is at issue: the upland zone, which is the land above the mean high-water mark; the intertidal zone, which is the shore and flats between the mean high- and low-water marks but not exceeding 100 rods; or the submerged land below the mean low-water mark. *See Britton I*, 2009 ME 60, ¶ 15, 974 A.2d at 308; *Bell v. Town of Wells (Bell II)*, 557 A.2d 168, 169 n. 3, 170–71 (Me.1989); *Bell v. Town of Wells (Bell I)*, 510 A.2d 509, 511–15 (Me. 1986); *Donnell v. Joy*, 85 Me. 118, 119–20, 26 A. 1017, 1018 (1892).

[¶ 7] Under the common law, the land of the intertidal zone belongs to the owner of the adjacent upland property, subject to certain public rights. *Bell II*, 557 A.2d at 173; *Matthews v. Treat*, 75 Me. 594, 598 (1884); *Duncan v. Sylvester*, 24 Me. 482, 486 (1844). The ownership of the intertidal zone is "as land and not a mere easement." *Donnell*, 85 Me. at 119, 26 A. at 1018. Ownership of the intertidal zone may be separated by deed from ownership of the adjacent upland. *Dunton v. Parker*, 97 Me. 461, 467, 54 A. 1115, 1118

(1903). The submerged land below the low-water mark is owned by the State, which has the authority, pursuant to 12 M.R.S. § 1862(2)(A)(6), to lease it. *See Britton I*, 2009 ME 60, ¶¶ 2, 10 n. 5, 974 A.2d at 305, 307.

[¶ 8] The common law provides owners of the land abutting a body of water "certain rights or privileges different from those generally belonging to the public." *Great Cove Boat Club v. Bureau of Pub. Lands*, 672 A.2d 91, 95 (Me.1996). These include:

> (1) the right to have the water remain in place and retain, as nearly as possible, its natural character, (2) the right of access to the water, (3) subject to reasonable restrictions, the right to wharf out to the navigable portion of the body of water, and (4) the right of free use of the water immediately adjoining the property for the transaction of business associated with wharves.

*Id.* These rights have long been subject to reasonable regulation by the State to protect the public's rights, pursuant to the public trust doctrine. *Britton I*, 2009 ME 60, ¶ 15, 974 A.2d at 308; *Great Cove*, 672 A.2d at 95.

[¶ 9] The upland or shore owner's common law riparian right of access was without remedy against private infringement prior to the enactment of the Wharves and Weirs Act. *Donnell*, 85 Me. at 119–20, 26 A. at 1018. In *Donnell*, this Court described the problem for the landowner in the context of a case involving a weir:

> Within its limits, the State owned the land under the sea below low water mark as well as the flats on which the defendant's weir was located, and had the authority to regulate the time and manner of the taking of fish by the public in the waters thereon. If one of the public could erect a weir so immedi-

ately in front of the owner's flats as to naturally obstruct fish in their habitual passage with the flow and ebb of the tide to the latter's weir, it would be of but little value.

*Id.* (citations omitted). In *Donnell,* the Court noted that the Legislature enacted the statute to remedy this situation. 85 Me. at 120, 26 A. at 1018; *see also Gerrish v. Proprietors of Union Wharf,* 26 Me. 384, 391–93 (1847) (noting the lack of any monetary remedy for the infringement of riparian rights caused by boats docked at a wharf below the low-water mark because the affected party did not have a property interest in the submerged land beneath that part of the wharf).

[¶ 10] The Wharves and Weirs Act has existed in various forms since the mid–1800s. *See* R.S. ch. 17, § 21 (1857). In 1876, the Legislature granted municipal officers the authority to issue permits for wharves and weirs provided they "would not be an obstruction to navigation, or an injury to the rights of others," and provided that no wharf could be "extended, erected or maintained" except in accordance with the statute. P.L. 1876, ch. 78, §§ 1, 4 (codified at R.S. ch. 3, §§ 60, 63 (1883)). In 1883, the statute was amended to require the consent of the adjacent landowner and to permit the adjacent landowner to recover a penalty of $50 in an action of debt for violation of the statute. P.L. 1883, ch. 239, § 2 (codified at R.S. ch. 3, § 63 (1883)). In 1901, an amendment applied the consent and penalty provisions to wharves as well as weirs and provided that the statute would not affect any wharves that were already in existence on a particular date in 1901. P.L.1901, ch. 220, §§ 1, 2 (codified at R.S. ch. 4, § 99 (1903)). The statute has remained substantially the same since then as to the issues addressed in this appeal. R.S. ch. 4, § 125 (1916); R.S. ch. 5, § 180 (1930); R.S. ch. 86, § 11 (1944); R.S. ch. 98, § 11 (1954); 38 M.R.S. § 1026.

[¶ 11] The statute is intended to protect the owner of flats "in the full, practicable enjoyment" of his or her proprietary rights. *Donnell,* 85 Me. at 120, 26 A. at 1018. In *Sawyer v. Beal,* 97 Me. 356, 358, 54 A. 848, 848 (1903), the Court stated that the purpose of the statute "was not to extend the ownership of the owner of the shore" or to provide any "new or additional rights," but rather to protect the enjoyment of existing rights of owners of upland, shore, and flats.

[¶ 12] We have long interpreted the statute to prohibit the maintenance of a wharf in front of the shore or flats of another landowner unless that landowner either consents or does not suffer any injury to the enjoyment of his or her rights. *Britton I,* 2009 ME 60, ¶¶ 22–23, 974 A.2d at 309–10 (citing *Sawyer,* 97 Me. at 358–59, 54 A. at 848–49). In *Britton I,* we held that the court correctly found that the Brittons did not consent to the continued operation of Varrell Wharf in front of their property. *Id.* ¶ 23, 974 A.2d at 310. Therefore, the only remaining issue for purposes of the Wharves and Weirs Act was whether the Brittons' property interests were injured by the wharf, because if their property interests were not affected, the statute would not apply and thus their consent would not be necessary pursuant to 38 M.R.S. § 1026. *Britton I,* 2009 ME 60, ¶¶ 23, 25, 974 A.2d at 310.

[¶ 13] In *Sawyer,* we held that whether there is an injury to property interests depends on the location of the wharf or weir relative to the affected land. 97 Me. at 358–59, 54 A. at 848–49. The Legislature did not intend the statute to prohibit the maintenance of a weir that was located over 500 feet from the plaintiff's shoreline, with more than sufficient depth of water at low water for navigation of large boats.

*Id.* at 357–59, 54 A. at 848–49. In *Britton I,* we distinguished the facts from those in *Sawyer.* "In this case, by contrast, the Donnells' wharf is much closer to the low-water mark in front of the Brittons' property, and the configuration of the two wharves limits the Brittons' access to navigable waters in front of their property by requiring them to navigate through the forty-one-foot gap." 2009 ME 60, ¶ 24, 974 A.2d at 310. The court erred when it determined that the Brittons were not injured. The forty-eight feet of the Varrell Wharf which extends across the Britton's frontage must be removed. On remand, the court shall determine how this should happen consistent with this opinion.

■ [¶ 14] The statute provides for "a penalty of $50 for each offense." 38 M.R.S. § 1026. Although the statute does not clarify what constitutes a single offense for purposes of damages, this Court held in 1903 in *Dunton* that the plaintiff was entitled to a judgment for $50 for an offending fish weir that had been maintained over an indefinite period exceeding one year. 97 Me. at 471–73, 54 A. at 1119–20. There has been no change to the penalty since then. 38 M.R.S. § 1026. We therefore hold that for purposes of damages, the Donnells' maintenance of Varrell Wharf over the entire period relevant to the Brittons' complaint constitutes a single offense. We recognize that in *Britton I* we suggested that for purposes of the statute of limitations, 14 M.R.S. § 752 (2009), every day that the wharf is maintained "serves as a new and separate violation of [38 M.R.S. § 1026]." 2009 ME 60, ¶ 20, 974 A.2d at 309. Our interpretation of the term "maintained" in section 1026 informed our decision in *Britton I* as regards the statute of limitations. *Id.* For purposes of damages, however, we look to the term "each offense" in section 1026 and interpret that term consistently with

our decision regarding damages in *Dunton.* 97 Me. at 473, 54 A. at 1120.

■ [¶ 15] On remand, the court also held that the Brittons lost their riparian right of access along the frontage occupied by Varrell Wharf through prescription and abandonment. Because as a matter of law the wharf does "injure or injuriously affect" the Brittons, however, *see Britton I,* 2009 ME 60, ¶ 25, 974 A.2d at 310, it cannot "be extended, erected or maintained except in accordance with [the Wharves and Weirs Act]." 38 M.R.S. § 1026. Although the statute does permit one who wishes to build or maintain a wharf to seek the consent of the landowner, it does not provide that one may acquire the right to maintain a wharf through prescription or abandonment. *See* 38 M.R.S. § 1026. We need not address the Donnells' arguments regarding their other equitable affirmative defenses.

The entry is:

Judgment vacated. Remanded for entry of judgment in favor of the Brittons; for an award of damages of $50 to the Brittons, plus interest and costs; and for further proceedings consistent with this opinion.