### PINE TREE TELEPHONE & TELEGRAPH COMPANY

v.

### PUBLIC UTILITIES COMMISSION.

Supreme Judicial Court of Maine.

Argued Sept. 7, 1993.
Decided Dec. 15, 1993.

Joel C. Martin (orally), Petruccelli & Martin, Portland, for plaintiff.

Glen Goodnough (orally), Carol MacLennan, Public Utilities Com'n, Augusta, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, COLLINS, RUDMAN and DANA, JJ.

CLIFFORD, Justice.

Pine Tree Telephone & Telegraph Company (Pine Tree) appeals from a Public Utilities Commission (Commission) decision denying Pine Tree's request to recoup legal expenses from an escrow account established to fund an extended area service plan. Pine Tree challenges the Commission's decision on the basis that it (1) violated Commission regulations by refusing to allow Pine Tree to recoup its legal expenses by means other than a rate proceeding, and (2) violated the scope of an earlier Commission order by denying Pine Tree's recovery of compliance-related attorney fees from the escrow fund, thereby depriving Pine Tree of its right to due process. Finding no error or abuse of the Commission's discretion, we affirm its decision.

Pine Tree is an independent telephone company that serves Gray, West Gray, and New Gloucester. In 1992, the Commission found that Pine Tree was earning excessive revenues and entered a two-part order.[1] In Part I of the order, the Commission ordered Pine Tree to place its excess earnings in a special reserve account to be treated as ratepayer monies. In Part II of the order, the Commission declared that the escrow account of excess earnings should be used to eliminate touch call and mileage earnings and to implement an extended area service (EAS) plan to increase the calling area served by Pine Tree. The Commission ordered the escrow account to hold $607,910 to be used to implement the EAS plan. In the order, the Commission allowed Pine Tree to recover in its rate base $95,741.50 in regulatory proceeding expenses, including $20,000 for attorney fees to be incurred in complying with the Commission's orders.

Pine Tree established an EAS plan in compliance with the order. When it became clear that New England Telephone (NET) and GTE would incur facilities costs as a result of Pine Tree's EAS plan, those companies petitioned the Commission to be reimbursed for their expenses. The Commission authorized reimbursement to GTE and NET for their one-time facilities expenses associated with implementing the EAS plan; the money for the reimbursement is to come from the escrow fund. The Commission, however, did not allow NET to be reimbursed for implementation expenses not related to facilities costs, disallowing its request for reimbursement for one-time costs associated with customer notification.

Following a petition from Pine Tree, the Commission indicated that Pine Tree would be permitted to use monies from the escrow account to pay for its one-time facilities plant costs incurred because of EAS plan implementation and to pay for its recurring toll losses created by the EAS plan. If Pine Tree did not use the entire escrow fund to pay for the EAS plan, then Pine Tree could use the escrow to make refunds to its customers. The Commission denied Pine Tree's request to use the escrow amount for legal services in excess of the $20,000 previously allowed for the compliance phase regulatory

1. Pine Tree unsuccessfully appealed from this order in a separate case. *Pine Tree Tel. & Tel.* *Co. v. Public Util. Comm'n,* 631 A.2d 57 (Me. 1993).

proceeding expenses,[2] or for any company expenses not directly related to one-time plant costs created by implementation of the EAS plan. Pine Tree appeals from this decision.[3]

██ This court generally refuses to second-guess agencies on matters within their expertise. *Imagineering, Inc. v. Superintendent of Ins.*, 593 A.2d 1050, 1053 (Me.1991). In such cases, we limit our review to determining whether the agency's conclusions are unreasonable, unjust, or unlawful in light of the record. *Id.* This court will intervene only when the Commission abuses its discretion, fails to follow its legislative mandate, or violates the Constitution. *Pine Tree Tel. & Tel. Co. v. Public Util. Comm'n*, 631 A.2d 57, 61 (Me.1993). The Commission's decision will not be disturbed if it results from a reasonable exercise of discretion and is supported by substantial evidence in the record.

## I.

Pine Tree first argues that it should be reimbursed from the escrow account for its unanticipated attorney fees incurred in the investigatory phase of the proceeding, the appeal from the order, and the compliance phase because these costs were in excess of its estimates that were factored into its rate structure. We disagree.

2. The $20,000 was part of the $95,749.50 in total regulatory proceeding expenses that the Commission allowed Pine Tree to include in its test year figure.

3. Contrary to the Commission's contention that Pine Tree failed to preserve its issues on appeal because it did not sufficiently raise them before the Commission, we find the substance of the issues Pine Tree raises in this appeal were brought before the Commission.

4. Me.Public Util.Comm'n Reg. Ch. 85 (Sept. 22, 1986) provides in pertinent part:
 1. Regulatory Proceeding Expenses.
 Regulatory proceeding expenses shall include any expense, fee or charge paid directly or indirectly by any public utility to any person, firm, corporation, or association other than its own employees, for legal ... or other expert or specialized services in association with any proceeding before the Maine Public Utilities Commission or in any proceeding before the

██ Chapter 85 of the Commission's regulations governs recovery of regulatory proceeding expenses.[4] It allows a utility to recover attorney fees incurred during Commission proceedings if the expense is found to be reasonable. Me. Public Util.Comm'n Reg. Ch. 85(1), (3) (Sept. 22, 1986). Regulatory proceeding expenses are normalized under Chapter 85. *Id.* at (3)(A). Normalization is a regulatory method by which the Commission calculates a utility's standard expenses in a given year, called the "test year." The Commission then allows the utility to recover these expenses from ratepayers every year until that utility has its rates revised at a later date.

Because regulatory proceeding expenses are normalized, the Commission allows utilities to include regulatory proceeding expenses in the test year figure. Even though a utility's regulatory proceeding costs may be higher than usual in a year when it is participating in Commission proceedings, it is allowed to include those costs in its test year. The Commission then divides the proceeding expense by the typical number of years between regulatory proceedings to determine the amount the utility should recover from ratepayers each year for its regulatory proceeding expenses. If more than the anticipated number of years lapse between regulatory or rate proceedings, the utility may receive a windfall; if the utility has a revision of its rates earlier than anticipated, the utili-

Maine Supreme Judicial Court arising out of a Commission proceeding.
. . . .
3. Ratemaking Treatment.
 A. *Policy*
 No public utility shall recover from its ratepayers any regulatory proceeding expense unless such expense has been found by the Commission to have been reasonable. The Commission will set regulatory proceeding expenses on a normalized test year basis.
 Pine Tree asserts that Chapter 85 governs only cases that are initiated by a utility's request for a rate increase. Therefore, the normalization approach listed in the rule should not apply to this proceeding, initiated by a customer complaint. Pine Tree also asserts that Chapter 85 guarantees to utilities reimbursement of all regulatory proceeding expenses. We disagree. Chapter 85 provides the exclusive means for a utility to recovery regulatory proceeding expenses and gives the Commission authority to decide whether to grant recovery for those expenses.

ty may not receive full reimbursement for the costs it incurred in the regulatory proceedings.

Chapter 85 requires that a utility file with the Commission all of the actual and estimated expenses incurred or to be incurred in regulatory proceedings for which it wants to be reimbursed. *Id.* at (2)(B)(1). Under this procedure, Pine Tree's request was for $100,-000 over a two-year normalization period. The Commission allowed Pine Tree $95,-741.50 in regulatory proceeding expenses; the annual recovery from ratepayers was $23,935 over a four-year normalization period. Pine Tree will continue to recoup $23,-935 from ratepayers each year until it undergoes another regulatory proceeding. Pine Tree did not object to the Commission's decision with respect to regulatory proceeding expenses at the time it was rendered. It now contends, however, that the estimate of its regulatory proceeding expenses (including the compliance phase) was too low and that it should be allowed to recoup those costs from the escrow account as a matter of right. We disagree.

This court applies a limited and deferential standard of review to the Commission's fact-finding and choice of ratemaking techniques. *New England Tel. & Tel. Co. v. Public Util. Comm'n,* 470 A.2d 772, 776 (Me.1984). The test year methodology employed by the Commission in this rate case to determine recovery of all expenses, including regulatory proceeding costs, is a standard approach to determining a utility's rates and revenues. *Id.* at 775. According to the record, Pine Tree filed its request for regulatory proceeding expenses and the Commission allowed most of these expenses. Pine Tree did not object to the Commission's ruling. Pine Tree now wants to recover from the escrow account its legal expenses in excess of its original estimate. This request is inconsistent with the test-year approach to ratemaking because granting the extra fees would supplement Pine Tree's recovery of normalized regulatory proceeding expenses with a direct reimbursement from the escrow account for the actual costs above the initial estimate.

Pine Tree does not suggest that the Commission used an improper methodology in calculating the regulatory proceeding expense. It merely contends that, in hindsight, Pine Tree and the Commission underestimated the total legal costs associated with the proceeding. The Commission, however, often deals with estimates; it need not eliminate all inaccuracy for its approach to be sound. *New England Tel. & Tel. Co.,* 470 A.2d at 776. It need only ensure that its ratemaking methodologies are reasonably accurate. *Id.* In this case, the Commission's initial test-year estimates were in line with Pine Tree's estimates. Moreover, Pine Tree did not appeal the award at the time it was made. There are no grounds, therefore, for allowing Pine Tree to recoup these costs in excess of its estimate directly from the escrow account in addition to its annual recovery of estimated proceeding expenses through its rates. To do so would circumvent the test-year ratemaking methodology.

## II.

Pine Tree also contends that, by refusing to reimburse Pine Tree for its legal expenses incurred in complying with the order, the Commission exceeded the scope of its order, and in doing so, violated Pine Tree's constitutional right to due process. Pine Tree argues that the Commission's order required that Pine Tree implement an EAS plan as large as the escrow would allow. When the Commission refused to allow Pine Tree to use the escrow funds to pay attorney fees incurred in creating the EAS plan, the Commission forced Pine Tree to spend more on the EAS plan than it originally had required, thereby exceeding the scope of its original order. The Commission, however, contends that attorney fees were not an integral part of the EAS plan and the decision to reimburse facilities expenses but not attorney fees from the escrow account was within its discretion.

 We review allowances and disallowances of utility expenses for an abuse of discretion. *See New England Tel. & Tel. Co. v. Public Util. Comm'n,* 448 A.2d 272, 311 (Me.1982). If a regulatory body has acted arbitrarily and exceeded the scope of its orders, then that body may have violated the due process clause. *See* Me. Const. art. 1,

§ 6–A (amended 1963); U.S. Const. amend. XIV, § 1 ("nor shall any State deprive any person of life, liberty, or property without due process of law"); 1 Am.Jur.2d *Administrative Law* § 148 (1962) (intent of substantive due process is to protect citizens from the arbitrary action of public officials).

■ According to Pine Tree, the Commission's order required that the EAS plan be funded exclusively by the escrow account; thus, legal fees and all other costs to implement the EAS plan must be allowed from the escrow. Pine Tree argues that no valid distinction exists between the one-time, nonrecurring facilities expenses that the Commission reimbursed from the escrow account and the one-time, nonrecurring attorney fees that the Commission refused to reimburse. We find little merit in this contention.

Although the question whether the Commission should allow a utility to recoup expenses from an escrow account is an issue of first impression in this jurisdiction, this court has, on several occasions, reviewed Commission decisions about whether certain costs are recoverable in ratemaking proceedings. The two situations are comparable because in both contexts, the Commission must determine whether an expense borne by the utility should be funded by ratepayers. The legislature has delegated to the Commission the duty to decide whether a utility has met its burden of justifying its recovery of a particular expense from ratepayers. *New England Tel. & Tel. Co.*, 448 A.2d at 311. The Commission's decisions as to recovery of certain expenses from ratepayers are reviewed for an abuse of discretion and upheld if reasonable and supported by sufficient evidence in the record. *See, e.g., id.* at 310–11 (disallowing research and development costs); *New England Tel. & Tel. Co. v. Public Util. Comm'n.* 390 A.2d 8, 56–57 (Me.1978) (disallowing charitable contributions and lobbying costs as ratemaking expenses).

In this case, the Commission decided to reimburse one-time, nonrecurring *facilities* expenses related to implementing the EAS plan but not to reimburse NET's notifications costs and Pine Tree's attorney fees. Facilities costs ensure the technical viability of the EAS plan, and differ from legal ex-

penses that, like costs of customer notification, do not serve a similar purpose. The decision made by the Commission in this case as to which one-time costs it would allow Pine Tree and other involved utilities to recover from ratepayers through the escrow account is within its broad discretion. Moreover, the Commission has not barred Pine Tree entirely from recovering the costs of its legal fees. Pine Tree could request the legal costs denied from escrow through a single-issue rate case or through a new rate proceeding. Although Pine Tree protests that those methods are costly and inefficient, it has not argued that they are unavailable.

Because the Commission acted within its authority and discretion when it denied recovery to Pine Tree of its legal expenses incurred in complying with the order, it did not deprive Pine Tree of its right to due process.

The entry is:

Judgment affirmed.

All concurring.