**PUBLIC ADVOCATE**

v.

**PUBLIC UTILITIES COMMISSION.**

Supreme Judicial Court of Maine.

Argued Jan. 25, 1995.

Decided March 10, 1995.

---

William C. Perkins (orally), Public Advocate, Augusta, for appellant.

Peter G. Ballou (orally), Public Utilities Com'n, Augusta, Andrew Landry (orally), Bangor Hydro–Electric Co., Bangor, for appellees.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, DANA, and LIPEZ, JJ.

LIPEZ, Justice.

The Public Advocate appeals from an order entered by the Public Utilities Commission awarding Bangor Hydro–Electric Company $7,320,000 in rate increases associated with projected revenue losses for the rate or attrition year, that is, from March 1994 through February 1995. The Public Advocate contends that the industrial sales component of the Commission's attrition[1] award lacked substantial evidentiary support and its findings of fact were deficient pursuant to 5 M.R.S.A. § 9061 (1989).[2] We disagree and we affirm.

---

1. "Attrition is the erosion in the rate of return on rate base resulting from an expectation that net operating expenses or net investment in plant, or both, will increase more rapidly than revenues."

*New England Tel. & Tel. Co. v. Public Util. Comm'n,* 448 A.2d 272, 311 (Me.1982).

2. 5 M.R.S.A. § 9061 (1989) provides in pertinent part:

In May 1993, Bangor Hydro filed revised rate schedules that would result in Bangor Hydro's revenues increasing by approximately $22.8 million. For reasons not at issue, that projection was twice reduced, eventually to $17.57 million. Following hearings in December 1993, the Commission authorized Bangor Hydro to file rate schedules increasing its rates by $11,047,361. This figure included the $7,320,000 attrition allowance. The Public Advocate does not challenge the remainder of the award corresponding to Bangor Hydro's test year revenue requirements.

### The Attrition Allowance

 Our review is limited. We review only questions of law, accepting the Commission's findings of facts as final if they are supported by substantial evidence on the record. *New England Tel. & Tel. Co. v. Public Util. Comm'n*, 448 A.2d 272, 278–79 (Me. 1982). We defer to the Commission's choice of ratemaking methodologies or techniques. *Id.* at 279. We consider the Commission's obligation to ensure, as far as possible, a fair and reasonable rate of return for the utility. *Id.* at 312. This obligation encompasses a duty to determine attrition even when the utility fails to prove the specific amount of attrition, if there is a basis for finding some attrition. *Id.* "That the Company's methodology was flawed does not obviate the Commission's responsibility of adequately compensating the utility for any attrition-regulatory lag that the Company was in fact experiencing." *Maine Water Co. v. Public Util. Comm'n*, 388 A.2d 493, 497 (Me.1978). We will uphold the Commission's attrition award if it is reasonable and supported by substantial evidence. *New England Tel. & Tel. Co. v. Public Util. Comm'n*, 448 A.2d at 312.

There are three components to an attrition analysis: attrition-year rate base, attrition-year expense, and attrition-year revenues. The sales forecast, outlining some of the attrition-year revenues, consists of residential, commercial, industrial, wholesale, and lighting sales. Bangor Hydro's forecasts for most of the residential and commercial classes used econometric models. For the industrial sales forecast, Bangor Hydro used a "judgmental" methodology. The Commission summarized this judgmental methodology in its order: "[T]he Company makes use of whatever it might know about the customer's past use and other behavior, and its business and economic conditions, and then uses whatever projection techniques might seem appropriate, plus the forecaster's judgment, to arrive at a forecast for each customer in the class."

 The Commission strongly criticized Bangor Hydro for inadequately explaining and supporting its industrial sales forecast:

> There is nothing in the record that describes the information [Bangor Hydro] obtained about the future purchases of its largest customers or how it estimated or applied its own judgment to this data. In fact, aside from the general description of the methodology, this forecast consists of nothing more than bare totals of expected sales to a group of customers over various periods. As a result it is impossible for the Commission or other parties to verify or otherwise assess the industrial forecast.

Given Bangor Hydro's approach to the explanatory data, as well as other sources of uncertainty, the Commission considered rejecting the industrial sales forecast. If it did so, the Commission concluded that it would have to deny the attrition request as a whole because of the integral relationship of the industrial sales forecast to the sales forecast generally and, in turn, to the attrition analysis as a whole.

The Commission chose a different course suggested by John Stutz, a witness called by the Commission's Advocacy Staff. This approach attempted to shield ratepayers from the risks associated with forecast error by using the highest reasonable sales forecast. Acknowledging some reluctance to use either one of Bangor Hydro's 1993 industrial sales

Every agency decision made at the conclusion of an adjudicatory proceeding shall be in writing or stated in the record, and shall include findings of fact sufficient to apprise the parties and any interested member of the public of the basis for the decision.

forecasts[3] because of the lack of supporting data, the Commission ultimately decided to use the October 1993 industrial forecast based on its own evaluation of the reasonableness of the figure. The Commission found that Bangor Hydro's October 1993 forecast projected industrial sales for 1994 that would be 5.7% higher than actual sales in 1993. Further, the projection would be "greater than the actual sales increases to industrial customers in any of the past five years." The Commission concluded that the forecast "*appears* to be a reasonable one."

The Commission then made a further adjustment to this figure pursuant to Stutz's suggestion, increasing the projection by the difference between actual and forecasted 1993 sales. The Commission had at its disposal the actual sales figures for all of 1993. The Commission also cited evidence pertaining to the state of the Maine economy. Although the Commission criticized Bangor Hydro for not providing sufficient information for the Commission to verify the Company's forecast, the Commission ultimately accepted the October 1993 forecast based on actual data available to it with adjustments suggested by a credible witness. There was substantial evidence on the record to support the Commission's determination of the industrial sales component of the attrition award.[4]

### Findings of Fact

■ The Public Advocate challenges the adequacy of the findings of fact contained in the Commission's order. The Commission must, pursuant to 5 M.R.S.A. § 9061 (1989), include in its decision "findings of fact sufficient to apprise the parties and any interested member of the public of the basis for the decision." Findings of fact serve the following purposes: "to facilitate judicial review, avoid judicial usurpation of administrative functions, assure more careful administrative considerations, help parties plan cases for rehearing or judicial review, and to keep agencies within their jurisdiction." *Maine*

*AFL–CIO v. Superintendent of Ins.*, 595 A.2d 424, 428 (Me.1991). The findings should inform the parties and interested public of the basis for the Commission's decision. *Id.*

Although the Commission could have distinguished more clearly between its rejection of Bangor Hydro's methodology for arriving at an industrial sales forecast and its recognition that the result itself was verifiable by other means, this inadequacy does not require us to jettison the findings of fact as a whole for failure to satisfy section 9061. The findings of fact alert the reader to the sources of the Commission's decision: the approach recommended by Stutz, the report of the New England Economic Project, testimony about that report, and the record of Bangor Hydro's past industrial sales. This articulation of a basis for the decision is clearly sufficient.

The entry is:

Order affirmed.

All concurring.

---

3. Bangor Hydro presented two attrition year forecasts, one from April 1993, provided as part of its direct case, and an updated October 1993 forecast, provided as part of its rebuttal case.

4. Our decision that the Commission's grant of attrition is supported by substantial evidence obviates the need to address the Public Advocate's argument that the order deprived ratepayers of their property without due process of law.