**Edmund J. QUIRION**

v.

**PUBLIC UTILITIES COMMISSION.**

Supreme Judicial Court of Maine.

Submitted on Briefs Sept. 19, 1996.

Decided Oct. 29, 1996.

Matthew E. Pollack, Pollack & Quirion, P.A., Topsham, for Plaintiff.

Lisa Fink, Public Utilities Commission, Augusta, for Defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, DANA, and LIPEZ, JJ.

RUDMAN, Justice.

Edmund J. Quirion appeals from the decision of the Public Utilities Commission ("PUC" or "Commission") following an investigation into the rates of his water utility. Since 1984, Quirion has owned a parcel of land located in the town of Weld that includes a building that he operated as an inn and restaurant known as the Weld Inn and also includes a spring located near the Inn. The spring provides water to the Inn and several seasonal residences located nearby. Several cottage owners complained to the PUC in the summer of 1995 that Quirion had refused to provide water to their cottages.

In an order issued on July 6, 1995, the PUC instructed Quirion to turn on the water to those cottages. The PUC held a hearing in August of 1995 on their investigation of the rates Quirion charged for water service. The PUC had opened their rate investigation in 1990, and Quirion now challenges the Commission's exercise of jurisdiction over him. Quirion also contends that the PUC erred in denying his motion to dismiss the investigation because of the five year gap between the commencement of the investigation and its conclusion; takes issue with the PUC's valuation of his property for rate making purposes; and further contends that the PUC erred in ruling that he could not issue bills for water service to the cottages for the years 1991–1993. We affirm the decision of the PUC.

## I. PUC jurisdiction

Quirion's challenge to the PUC's denial of his motion to dismiss the rate investi-

gation is a collateral attack. He argues that the Commission does not have jurisdiction over him because he is not a water utility. While Quirion advances numerous theories in support of his contention, we do not need to address them. The time for his appeal of the PUC's assertion of jurisdiction has long since passed. Quirion was initially declared to be operating a public utility in 1990, when several of the cottage owners made the same complaint to the PUC that they did in 1995. In an order dated June 11, 1990, the PUC ruled that Quirion was operating a water utility pursuant to Title 35–A M.R.S.A. § 102(22).[1] Quirion did not appeal the PUC's 1990 decision, and his challenge to the Commission's jurisdiction at this juncture is untimely and must be rejected.

██ "We have extended the principle of the res judicata effect of final judgments to adjudicative decisions of administrative bodies. . . ." *Standish Tel. Co. v. Saco River Tel. & Tel. Co.,* 555 A.2d 478, 481 (Me.1989). A valid and final judgment of the PUC has res judicata effect. *Ervey v. Northeastern Log Homes,* 638 A.2d 709, 711 (Me.1994). The 1990 PUC decision is clearly final in its determination that Quirion is operating a public utility, a decision that Quirion did not appeal within the 30 day appeal period. M.R.Civ.P. 73(h); 35–A M.R.S.A. § 1320(1) (1988). Quirion challenges the "validity" of the decision by arguing that the PUC did not have jurisdiction over him. While we have recognized the provision in the Restatement (Second) of Judgments § 12 allowing a collateral attack on an otherwise final judgment, in the instant situation there is no "manifest abuse of authority, substantial infringement of the authority of another tribunal, or a need to entertain a belated challenge as a

matter of procedural fairness." *Crosby v. Town of Belgrade,* 562 A.2d 1228, 1230 (Me. 1989). *See also S.D. Warren v. Maine Central R.R.,* 126 Me. 23, 135 A. 526 (1926). Quirion did not object to the PUC's jurisdiction over him until five years after it was exercised. The PUC's ruling was clearly within its statutorily granted powers, is final and valid, and cannot now be challenged.[2]

## II. The rate investigation

██ Quirion also contends that the PUC erred in denying his motion to dismiss the rate investigation because of the five year lapse between the 1990 opening of the investigation and the 1995 hearing and disposition. Chapter 110, Section 746 of the Commission's rules gives the PUC discretion to dismiss an action for lack of prosecution:

> The Commission on its own motion, after notice to the parties, and in the absence of a showing of good cause to the contrary, *may* dismiss an action for want of prosecution at any time more than two years after the last docket entry showing any action taken therein by the person initiating the proceeding. (Emphasis added.)

The rule clearly states that the dismissal of an action lies within the discretionary authority of the Commission. *Cf.* Me.R.Civ.P. 41(b)(1) ("The court . . . *shall* dismiss an action for want of prosecution at any time more than two years after the last docket entry . . .") (emphasis added.) With the exception of a May 21, 1991, procedural order from the Commission consolidating docket numbers in the rate investigation, the last docket entry in the investigation into Quirion's rates was a May 17, 1991, letter from a PUC staff member to Quirion requesting in-

---

1. " 'Water utility' includes every person, its lessees, trustees, receivers or trustees appointed by any court, owning, controlling, operating or managing any water works for compensation within this State. . . ."

2. Title 35–A M.R.S.A. § 103(2) provides the PUC with the following powers and duties:
   "A. All public utilities are subject to the jurisdiction, control and regulation of the commission and to this Title."

Title 35–A M.R.S.A. § further provides that:
"The provisions of this Title shall be interpreted and construed liberally to accomplish the purpose of this Title. The commission has all implied and inherent powers under this Title, which are necessary and proper to execute faithfully its express powers and functions specified in this Title."

formation from him on construction work undertaken on the water system "so that we can finish our analysis of the revenue requirement and rates." Quirion never responded to that inquiry, nor did he at any time during the course of the rate investigation petition for relief from the agency inaction.[3] We find that Quirion suffered no harm from the administrative delay.

### III. Valuation of utility property

■■■ Quirion next contends that the PUC erred in valuing the real property used in the operation of the utility at $500. Our review of PUC factual determinations such as valuation is limited. "We review only questions of law, accepting the Commission's findings of fact as final if they are supported by substantial evidence on the record. We defer to the Commission's choice of ratemaking methodologies or techniques." *Public Advocate v. P.U.C.*, 655 A.2d 1251, 1253 (Me. 1995). The Commission is the judge of the facts in ratemaking procedures. *New England Tel. & Tel. Co. v. P.U.C.*, 148 Me. 374, 377, 94 A.2d 801, 803 (1953).

Quirion presented no evidence of the value of the real estate used in the operation of the water utility apart from the original purchase price of the Weld Inn and surrounding land. When the PUC values property for ratemaking purposes, it includes only the property of a public utility "which is used or required to be used in its service to the public. . . ." 35–A M.R.S.A. § 303 (Supp.1995). Quirion submitted nothing to the Commission other than the purchase price of the Weld Inn, and that purchase price included the Inn itself and surrounding lands that clearly were not "used or required to be used" by the water utility. The Commission properly rejected his proposed valuation.

■■■ Quirion did not meet his burden in justifying his recovery of a particular expense from ratepayers. *Pine Tree Tel. & Tel. Co. v. P.U.C.*, 634 A.2d 1302, 1306 (Me. 1993). The PUC acted properly in independently determining the value of utility property when the utility fails to prove its value. *A.A.R.P. v. P.U.C.*, 678 A.2d 1025, 1030 (Me. 1996). The Commission relied on the valuation estimate of its own expert, and that valuation is supported by substantial evidence in the record. *Central Maine Power v. P.U.C.*, 433 A.2d 331, 341 (Me.1981).

### IV. Water service from 1991–1993

■■■ Quirion's final contention on appeal is that the PUC erred in ruling that he could not issue bills to his customers in 1995 for water service for the years 1991, 1992 and 1993. The Commission has statutory authority to regulate the billing practices of utilities. 35–A M.R.S.A. § 309 (1989).[4] Quirion argued before the Commission that he would have billed for those years, but a PUC staff member made an oral representation to him that he could not issue bills for water service while his rates were under investigation. The Commission rejected Quirion's contentions and denied his request to bill retroactively for the years 1991–1993. The Commission's actions were within its authority and were neither arbitrary nor capricious.

The entry is:

Decision affirmed.

All concurring.

■■■

---

3. Under the Maine Administrative Procedure Act, "[a]ny person aggrieved by the failure or refusal of an agency to act shall be entitled to judicial review thereof in the Superior Court. The relief available in the Superior Court shall include an order requiring the agency to make a decision within a time certain." 5 M.R.S.A. § 11001(2) (1989).

4. 35–A M.R.S.A. § 309(1) states that "it is unlawful for any public utility to charge, demand, collect or receive, for any service performed by it within the State or for any service in connection with that performance, a greater or lesser compensation than is specified in such printed schedules as may at the time by in force, or to demand, collect or receive any rate, toll or charge not specified in the schedules."