2008 ME 166

**STATE of Maine**

v.

**Rodman E. THOMPSON.**

Supreme Judicial Court of Maine.

Argued: May 15, 2008.
Decided: Nov. 4, 2008.

Matthew P. Schaefer, Esq. (orally), Brann & Isaacson, Lewiston, ME, for Rodman E. Thompson.

G. Steven Rowe, Attorney General, Kelly L. Turner, Asst. Atty. Gen. (orally), Augusta, ME, for the State Tax Assessor.

Panel: SAUFLEY, C.J., and CLIFFORD, ALEXANDER, LEVY, SILVER, MEAD, and GORMAN, JJ.

Majority: ALEXANDER, LEVY, SILVER, MEAD, and GORMAN, JJ.

Dissent: SAUFLEY, C.J., and CLIFFORD, J.

GORMAN, J.

[¶ 1] Rodman E. Thompson appeals the entry of a summary judgment in the Superior Court (Kennebec County, *Marden, J.*) in favor of the State Tax Assessor on its complaint to collect income taxes assessed against Thompson. Thompson argues that notice by the Assessor was deficient under both 36 M.R.S. § 111(2) (2007)[1] and due process requirements, and that the court erred by finding that the assessments became final due to Thompson's failure to request review, barring him from now contesting that he is a Maine resident. We are satisfied, based on the record before us, that the Superior Court did not err in granting summary judgment on the issue of notice. We do, however, vacate a portion of the judgment and remand to the Superior Court for fact-finding consistent with this opinion.

## I. BACKGROUND

[¶ 2] Rodman E. Thompson or his family members have for many years owned and used property in Northeast Harbor. In 1996, he registered to vote in Maine, claiming Northeast Harbor as his residence. In 2001, the State Tax Assessor sent Thompson, by certified mail, a demand for filing of Maine State tax returns, for tax years 1996 and 1997, to his last known address, which was a post office box in Northeast Harbor.[2] The letter was signed for by G. Damis. Thompson claims he never received the letter.

[¶ 3] Thompson did not file Maine State tax returns for tax years 1996 and 1997. In January 2002, the Assessor sent an estimated assessment for those years by certified mail to Thompson at a Pennsylvania address it obtained from the Internal Revenue Service (IRS).[3] The notice of assessments was returned to the Assessor with the notation "unclaimed." The Assessor remailed the notice of assessments to Thompson at the same Pennsylvania address via first class mail pursuant to 36 M.R.S. § 111(2). The notice alerted Thompson of his right to seek reconsideration, but Thompson did not do so. In April 2002, the Assessor sent a notice and demand for payment of the tax, interest, and penalties, by certified mail, to Thompson's Pennsylvania address. Audrey Matthew signed for the letter. Thompson claims he never received the notice.

---

1. Title 36 M.R.S. § 111(2) (2007) provides, in pertinent part:

 **2. Notice.** "Notice" means notification served personally or mailed by certified or registered mail or by any courier service providing evidence of delivery to the last known address of the person for whom the notification is intended.

 If the State Tax Assessor attempts to give notice by certified or registered mail or by courier and the mailing is returned with the notation "unclaimed" or "refused" or a similar notation, the assessor may then give notice, for purposes of this Title, by sending the notification by first-class mail to the person for whom the notification is intend-

 ed at the address used on the returned certified or registered mail. Notice given in this manner is deemed to be received 3 days after the first-class mailing, excluding Sundays and legal holidays.

2. The Assessor appears to base its taxing authority on its claim that Thompson was a "resident individual" of Maine during the tax years in question. There is nothing in the record before us that suggests the levy was based on Maine-based income of a non-resident.

3. Thompson admits that the Pennsylvania address used by the Assessor is his address.

[¶ 4] In November 2002, the Assessor sent a demand for filing of Maine State tax returns for 1998 and 1999, by certified mail, to Thompson's Pennsylvania address. This letter was also signed for by Audrey Matthew. Thompson did not file Maine State returns for 1998 or 1999 and, in January 2003, using information provided by the IRS, the Assessor sent an estimated assessment for those years to Thompson's Pennsylvania address via certified mail. Thompson admits that he received that notice. Thompson did not seek reconsideration of the assessments. In March 2003, the Assessor sent a notice and demand for payment of the tax, interest, and penalties for 1998 and 1999 via certified mail to Thompson's Pennsylvania address. The demand was signed for by Audrey Matthew.

[¶ 5] Thompson never paid any of the assessed taxes. The assessments totaled $159,190.10 at the time the Attorney General filed a complaint for collection of unpaid taxes, pursuant to 36 M.R.S. § 174 (2007), in the Superior Court in December 2006. Thompson raised several affirmative defenses, including that he was not a resident of Maine during 1996–1999, arguing that he has always been a resident of Pennsylvania.[4] The State moved for summary judgment asserting, among other things, that the assessments had become final and Thompson was therefore precluded from litigating the issue of residency. Thompson filed a motion to dismiss for lack of subject matter jurisdiction.

[¶ 6] After a hearing, the court granted the State's summary judgment motion and denied Thompson's motion to dismiss. The court determined that the final assessments have res judicata effect and bar Thompson from contesting his residency.

Additionally, the court found that notice was sufficient, pursuant to 36 M.R.S. § 111(2) and due process requirements, and therefore enforced the assessments, ordering Thompson to pay $159,190.10, plus interest and costs. Thompson filed this appeal.

## II. DISCUSSION

[¶ 7] We review the entry of a summary judgment for errors of law, viewing the evidence in the light most favorable to the party against whom the judgment was entered, and will uphold the judgment if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Landry v. Leonard,* 1998 ME 241, ¶ 4, 720 A.2d 907, 908. A genuine issue of fact exists when "the evidence requires a fact-finder to choose between competing versions of the truth." *Farrington's Owners' Ass'n v. Conway Lake Resorts, Inc.,* 2005 ME 93, ¶ 9, 878 A.2d 504, 507. A material issue of fact exists when the fact could affect the outcome. *Id.*

[¶ 8] Thompson argues that res judicata does not apply to the assessments that became final by default. We review decisions regarding the effect of a prior judgment on a present action, which is a question of law, de novo. *Currier v. Cyr,* 570 A.2d 1205, 1207–08 (Me.1990). Res judicata applies to bar relitigation if: "(1) the same parties or their privies are involved in both actions; (2) a valid final judgment was entered in the prior action; and (3) the matters presented for decision in the second action were, or might have been litigated in the first action." *Johnson v. Samson Constr. Corp.,* 1997 ME 220, ¶ 6, 704 A.2d 866, 868 (quotation

---

4. Although Pennsylvania, like Maine, imposes a personal income tax, the record includes a certificate from Pennsylvania tax officials that they have no record of Thompson filing any income tax returns for the years at issue.

marks omitted). Additionally, we have extended the res judicata effect of final judgments to "adjudicative decisions of administrative bodies." *Standish Tel. Co. v. Saco River Tel. & Tel. Co.*, 555 A.2d 478, 481 (Me.1989).

[¶ 9] Only the finality, adjudicative nature, and validity of the assessments are in question.

## A. Final Judgment

■ [¶ 10] Thompson argues that the assessments do not constitute a final judgment because in a collection action brought pursuant to 36 M.R.S. § 174, the Assessor's certificate is only "prima facie evidence of the levy of the tax, of the delinquency and of the compliance by the assessor with [title 36] in relation to the assessment of the tax." We disagree. We have stated that "A final judgment or final administrative action is a decision that fully decides and disposes of the entire matter pending before the court or administrative agency, leaving no questions for the future consideration and judgment of the court or administrative agency." *Carroll v. Town of Rockport*, 2003 ME 135, ¶ 16, 837 A.2d 148, 154.

[¶ 11] Title 36 M.R.S. § 173 (2007), "Collection by warrant," provides for collection of assessed taxes by warrant and specifically provides that the warrant "shall have the force and effect of an execution issued upon a judgment in a civil action for taxes." Similarly, section 174, "Collection by civil action," is a method of executing a final assessment resulting from either a determination by the Superior Court upon review of the assessor's reconsideration of its assessment or, as in this case, a default assessment that became final as a result of inaction on the part of the taxpayer.[5] Although section 174 allows an evidentiary proceeding, based on the "prima facie evidence" language, the proceeding is specifically a method for collection of the already final assessments and does not indicate that the Assessor or the Superior Court, as the case may be, left some issue unanswered and failed to enter a final judgment. Accordingly, the existence of a statutory method of enforcement, which may or may not ever be pursued by the State, does not undermine the finality of the assessments resulting from 36 M.R.S. § 151 (2007).

[¶ 12] Additionally, reading section 174 as Thompson suggests would render section 151 meaningless. We give statutory language its plain meaning and do not treat language as superfluous or meaningless and, therefore, decline to adopt Thompson's interpretation of section 174. *See Stromberg–Carlson Corp. v. State Tax Assessor*, 2001 ME 11, ¶ 9, 765 A.2d 566, 569.

---

5. Assessments become final either by determination of the Superior Court upon review of the Assessor's reconsideration of its assessment, or, as in this case, by default resulting from inaction on the part of the taxpayer. *See* 36 M.R.S. § 151 (2007). The version of section 151 in effect at the time the Assessor sent Thompson the first notice of assessments was 36 M.R.S.A. § 151 (Supp. 2001). Section 151 was amended in 2001, P.L. 2001, ch. 583, § 1 (effective Apr. 1, 2002). The version of section 151 in effect at the time the Assessor sent Thompson the second notice of assessments was 36 M.R.S.A. § 151 (Supp. 2002), which included the following language added at the end of the first paragraph:

> If a person receives notice of an assessment and does not file a request for reconsideration within the specified time period, the assessor may not reconsider the assessment pursuant to this section and no review is available in Superior Court regardless of whether the taxpayer subsequently makes payment and requests a refund.

The amendment only clarified, and did not change, the ways in which assessments become final under section 151.

## B. Adjudicative Proceeding

[¶ 13] Thompson also argues that because section 151 states that reconsideration of the assessments by the Assessor is not an adjudicative proceeding, res judicata cannot attach to the final assessments. We disagree. Thompson had an opportunity to have the Assessor reconsider the assessments and, if he wished to do so, to file a petition with the Superior Court to review the Assessor's ruling on the reconsideration.

[¶ 14] Pursuant to the versions of section 151 in effect at the times Thompson could have sought reconsideration and then review in the Superior Court:

> The Superior Court shall conduct a de novo hearing and make a de novo determination of the merits of the case. The court shall make its own determination as to all questions of fact or law. The Superior Court shall enter such orders and decrees as the case may require. The burden of proof is on the taxpayer.[6]

The essential elements of an adjudication include:

> 1) adequate notice; 2) the right to present evidence and legal argument and to rebut opposing evidence and argument; 3) a formulation of issues of law and fact to apply rules to specified parties concerning a specified transaction; 4) the rendition of a final decision; and 5) any other procedural elements as may be necessary to constitute the proceeding a sufficient means of conclusively determining the matter in question.

*Town of Ogunquit v. Cliff House & Motels, Inc.*, 2000 ME 169, ¶ 11, 759 A.2d 731, 735 (quotation marks omitted). Because the proceeding in the Superior Court would include a de novo hearing and determination on the merits of the case, the proceeding would include all essential elements of an adjudication.

[¶ 15] "If a party does not challenge an administrative order through an available appeal that contains the essential elements of adjudication, the failure to do so may have preclusive effect upon any subsequent litigation on identical issues and claims dealt with in the administrative order." *Town of Boothbay v. Jenness*, 2003 ME 50, ¶ 21, 822 A.2d 1169, 1175 (quotation marks omitted). In *Maines v. Secretary of State*, we determined that an administrative license suspension that became final due to the defendant's failure to request a hearing had a res judicata effect and barred the defendant from bringing a subsequent action challenging the constitutionality of the suspension statute. 493 A.2d 326, 329 (Me.1985). We reasoned that because the defendant could have sought an adjudicative hearing, but failed to exercise that right, he could not later escape the res judicata effect of the final suspension. *Id.* at 329–30.

[¶ 16] In this case, Thompson failed to exercise his right to reconsideration of the assessment and to appeal the reconsideration to the Superior Court; he cannot escape any res judicata effect of the final assessment based on lack of adjudication.

## C. Valid Judgment

[¶ 17] Thompson's final argument is that the default assessments are void because the Assessor acted beyond its authority by assessing taxes against Thompson, who claims that he was not a

---

**6.** Title 36 M.R.S.A. § 151 (Supp. 2001) and 36 M.R.S.A. § 151 (Supp. 2002) are the respective versions of section 151 that were in effect when the Assessor sent the first and second notices of assessments. Section 151 was further amended in 2003, P.L. 2003, ch. 242, § 1 (effective Sept. 13, 2003) (codified at 36 M.R.S. § 151 (2007)).

"resident individual" of Maine during the years at issue.[7]

### 1. 1997-1999

 [¶ 18] Based on the current state of the record in this summary judgment proceeding, a genuine issue of material fact exists with respect to Thompson's residency for years 1997-1999. Although Thompson's swearing that he was a Maine resident in 1996 when registering to vote, and the lack of any record of his payment of Pennsylvania income taxes during the years in question may make his claim of Pennsylvania residency difficult to prove, those difficulties of proof of contested facts do not justify summary judgment. Even when one parry's version of the facts appears more credible and persuasive to the summary judgment court, "a summary judgment is inappropriate if a genuine factual dispute exists that is material to the outcome." *Arrow Fastener Co., Inc. v. Wrabacon, Inc.,* 2007 ME 34, ¶ 17, 917 A.2d 123, 126. Summary judgment "is not a substitute for trial." *Id.* ¶ 18, 917 A.2d at 127.

 [¶ 19] Although, based on the record, Thompson has sufficient minimum contacts with the State to establish personal jurisdiction, it does not necessarily follow that the Assessor had authority to tax Thompson's income.[8] Taxation of the income of a non-resident, earned outside of Maine, is "constitutionally beyond this State's reach." *See Barney v. State Tax Assessor,* 490 A.2d 223, 225 (Me.1985); *see also Shaffer v. Carter,* 252 U.S. 37, 49-52, 40 S.Ct. 221, 64 L.Ed. 445 (1920).[9] If the Assessor acts outside of its taxing authority, its actions are void and subject to collateral attack. *See Sold, Inc. v. Town of Gorham,* 2005 ME 24, ¶ 12, 868 A.2d 172, 176 ("Subject to equitable defenses ... a governmental action may be challenged at any time, as ultra vires, when the action itself is beyond the jurisdiction or authority of the administrative body to act.").

 [¶ 20] Thompson did not waive his argument that the Assessor acted outside of its authority by failing to assert it earlier, as the Assessor cannot, by virtue of a person's failure to assert non-residency, enter final default assessments against a person who was beyond its constitutional and statutory reach. Although personal jurisdiction is not an issue in this case, we

---

7. Pursuant to the statute applicable during tax years 1996-1999, a "resident individual" is a person who is domiciled in Maine or "[w]ho is not domiciled in Maine, but maintains a permanent place of abode in this State and spends in the aggregate more than 183 days of the taxable year in this State." 36 M.R.S.A. § 5102(5)(B) (Supp. 1996). Title 36 M.R.S.A. § 5102(5)(B) (Supp. 1996) has since been amended. P.L. 2005, ch. 519, § G-1 (effective Mar. 29, 2006) (codified at 36 M.R.S. § 5102(5)(B) (2007)).

8. The Superior Court relied on *Quirion v. Public Utilities Commission* to find that the Assessor's final judgment has res judicata effect and bars Thompson from raising the issue of residency. 684 A.2d 1294 (Me.1996). However, in *Quirion,* we held, as we previously had, that collaterally attacking a judg-

ment for lack of subject matter jurisdiction is allowed only if there is "manifest abuse of authority, substantial infringement of the authority of another tribunal, or a need to entertain a belated challenge as a matter of procedural fairness." *Id.* at 1296 (quoting *Crosby v. Town of Belgrade,* 562 A.2d 1228, 1230 (Me.1989)). In *Quirion* we relied on the Restatement (Second) of Judgments § 12, which applies only to collateral attacks for lack of subject matter jurisdiction. We find *Quirion* inapplicable to this case because the issue is whether the Assessor acted outside of its taxing authority.

9. Additionally, 36 M.R.S. § 5111 (2007) provides that "[a] tax is imposed for each taxable year beginning on or after January 1, 2000, on the *Maine taxable income of every resident individual of this State,*" (emphasis added).

liken our holding that Thompson did not waive his lack of residency argument to our previous determinations that a failure to assert lack of personal jurisdiction does not waive the issue, and that even a default judgment entered without personal jurisdiction may be collaterally attacked. *See Architectural Woodcraft Co. v. Read,* 464 A.2d 210, 212 (Me.1983); *Lewien v. Cohen,* 432 A.2d 800, 805 (Me.1981) ("Without personal jurisdiction, any judgment entered by such a court is void and . . . should not be given res judicata effect.").

[¶ 21] The parties' statements of material facts indicate a factual dispute about Thompson's residency for years 1997–1999. Thompson asserts that he paid Pennsylvania income taxes, voted in Pennsylvania, and spent fewer than 183 days in Maine during those years. Taking the facts in the light most favorable to Thompson, as we are required to do, he may not have been a "resident individual" during the years in question. If Thompson was not a "resident individual," the Assessor acted beyond its authority in entering final assessments against him, and the default assessments would be void and could not have res judicata effect. Because there is a genuine issue of material fact with respect to residency for 1997–1999, the court erred in entering summary judgment and Thompson must be allowed a fact-finding hearing regarding residency for those years.

2. 1996

[¶ 22] The record shows that Thompson registered to vote in Maine in 1996 and swore an oath that he was, at that time, a resident of Maine.[10] He cannot now claim that he was not a resident in 1996, because a party to a summary judgment proceeding cannot create a dispute as to a material fact by making an assertion contrary to a fact stated in that party's prior sworn statement. *See Schindler v. Nilsen,* 2001 ME 58, ¶ 9, 770 A.2d 638, 641–42; *Zip Lube, Inc. v. Coastal Sav. Bank,* 1998 ME 81, ¶ 10, 709 A.2d 733, 735. Therefore, the final assessment for 1996 does have res judicata effect, and Thompson may not now collaterally attack that assessment by asserting that he was not a Maine resident in 1996.

III. CONCLUSION

[¶ 23] Although we note that Thompson's inaction is ill advised, a default judgment obtained by the Assessor against an individual beyond its taxing authority cannot be immune from collateral attack. To hold otherwise would be contrary to established principles requiring a valid judgment for purposes of res judicata and would potentially allow the State to tax individuals it is constitutionally and statutorily prohibited from taxing. We vacate the Superior Court's entry of summary judgment, because a genuine issue of material fact exists with respect to Thompson's residency for years 1997–1999.

The entry is:

Judgment vacated with regard to years 1997, 1998, and 1999. Judgment affirmed with regard to 1996.

SAUFLEY, C.J., with whom CLIFFORD, J., joins, dissenting.

[¶ 24] I must respectfully dissent.

[¶ 25] The Court concludes that Thompson, who swore under oath that he was a resident of Maine in 1996, and who

10. *See* 21–A M.R.S. § 112(1) (2007) ("The residence of a person [for voting] is that place where the person has established a fixed and principal home to which the person, whenever er temporarily absent, intends to return."). Although subparts of section 112(1) have been amended since 1996, this specific provision has remained unchanged.

received notice of the assessment of income taxes from 1996 through 1999, can ignore the State's actions and maintain the right to challenge those assessments at any time. I cannot square the Court's conclusion with any legal principle.

[¶ 26] According to the Court, an assessor's determination of tax liability can never be a "valid" judgment for res judicata purposes because the alleged taxpayer may contest the assessment based on lack of residency whenever the taxpayer wishes. On the record before us, such reasoning is not persuasive. To allow Thompson to wait until the State seeks to collect the assessed taxes and *then* challenge the factual basis of the assessments turns the concept of due process on its head.

[¶ 27] The Court cites to our decision in *Sold, Inc. v. Town of Gorham*, 2005 ME 24, 868 A.2d 172, as support for the proposition that an individual may challenge an income tax assessment based on residency at any time. In that case, the plaintiffs sought to challenge an ordinance requiring the collection of impact fees as a condition of a subdivision approval by a local planning board. *Id.* ¶ 1, 868 A.2d at 174. The plaintiffs brought a declaratory judgment action after the statutory time period for administrative appeal had expired. *Id.* ¶ 10, 868 A.2d at 176. We held that:

> municipal or state actions may be collaterally attacked as outside the jurisdiction or authority of an agency, *when it is claimed that the ordinance or statute under which the administrative agency purported to act was unconstitutional on its face*, thus rendering the administrative action beyond the lawful authority of the challenged agency.

*Id.* ¶ 12, 868 A.2d at 176 (emphasis added).

[¶ 28] We ultimately concluded in *Sold, Inc.* that the plaintiffs could not collaterally attack the actions of the local planning board, noting that the essence of the challenge was based not on the authority of the planning board to attach conditions generally, but rather on the unconstitutionality of the specific condition imposed. *Id.* ¶ 13, 868 A.2d at 176–77. We held that review of such administrative actions must be brought pursuant to, and within the time allowed by M.R. Civ. P. 80B. *Id.* Otherwise, "there would be, in effect, no time limit to appeal any action of a municipal government—or the state government for that matter—that is alleged to be inconsistent with a statutory or constitutional requirement." *Id.* ¶ 11, 868 A.2d at 176.

[¶ 29] More recently, we relied on *Sold, Inc.* in rejecting a due process challenge to a town ordinance designating the plaintiff's land as a strict resource protection tract. *Bog Lake Co. v. Town of Northfield*, 2008 ME 37, 942 A.2d 700. There, the plaintiff claimed that it was denied an opportunity to argue at a town meeting that the Town had improperly classified its land pursuant to the ordinance. *Id.* ¶ 14, 942 A.2d at 705. Citing to *Sold, Inc.*, we again addressed the distinction between a facial attack on the constitutionality of an ordinance itself, which could be raised at any time, and "an attack on the procedural activity surrounding it." *Id.* ¶ 13, 942 A.2d at 704–05. We ultimately concluded that the plaintiff could have argued that its land was improperly designated when it was originally classified, that the six-year statute of limitations had since passed, and that "[the plaintiff's] claim of procedural irregularities at the town meeting, even those of constitutional import, cannot resurrect [that claim] now." *Id.* ¶ 14, 942 A.2d at 705.

[¶ 30] The reasoning set forth in *Sold, Inc.* and *Bog Lake* applies equally to the case before us. Thompson does not challenge the authority of the Assessor generally, nor does he present a facial challenge

to the constitutionality of the relevant statute. At best, Thompson's argument can be characterized as a challenge to the Assessor's authority as applied to him, based upon his allegation that he was not a resident of Maine during the years in question. In essence, Thompson seeks a second opportunity to contest the Assessor's determination of residency. Thompson received notice of his right to request reconsideration, and could have challenged his residency status at the time the assessments were made. Because he chose not to avail himself of the statutory process provided to him, he should not now be permitted to raise the issue of residency as a defense to enforcement.

[¶ 31] Other jurisdictions have rejected attempts by taxpayers to collaterally attack tax assessments on grounds similar to those presented by Thompson. *See City of Hartford v. Faith Center, Inc.*, 196 Conn. 487, 493 A.2d 883 (1985) (concluding that claims of unconstitutional tax assessments are not properly raised for the first time in defense of a collection action); *Krug v. City of Philadelphia*, 152 Pa. Cmwlth. 475, 620 A.2d 46 (1993) (holding that failure to appeal tax assessment to the Tax Review Board results in a waiver of defenses, including lack of residency, in a subsequent enforcement action); *City of Philadelphia v. Kenny*, 28 Pa.Cmwlth. 531, 369 A.2d 1343 (1977) (holding that a failure to exhaust administrative review of tax assessments precludes a constitutional attack on the tax as applied). I see no reason to depart from the reasoning set forth by these courts and allow Thompson to await an enforcement action by the State before raising his lack of residency defense.

[¶ 32] Although the Court concedes that personal jurisdiction is not an issue in Thompson's appeal, it equates its holding to previous instances in which we have held that the failure to assert the defense of lack of personal jurisdiction does not result in a waiver of that defense. However, each of the holdings relied upon by the Court have been accompanied by substantial due process concerns. *See Architectural Woodcraft Co. v. Read*, 464 A.2d 210, 212 (Me.1983) ("Where ... a defendant has not appeared in an action and where due process issues are generated by the exercise of personal jurisdiction over him, the defense of lack of personal jurisdiction is not waived."); *Lewien v. Cohen*, 432 A.2d 800, 805 (Me.1981) ("An independent action, though rare, may be particularly appropriate where a judgment is allegedly void because it was procured by fraud and in violation of due process requirements so that an actual appearance and litigation on the merits by the affected parties were precluded."); *cf.* 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure, § 1391 at 522 (3d ed. 2004) ("[I]f there has been a failure of due process, that objection may permit relief from any judgment that has been entered or may be raised on collateral attack.").

[¶ 33] Here, Thompson swore an oath that he was a resident of Maine in 1996. Thompson received notice of the assessments in that year and the ensuing three years, alerting him to his right to request a reconsideration, and he failed to take any action to challenge the assessment within the time period provided by statute. *See* 36 M.R.S. § 151 (2007).[11] Upon these facts, Thompson received all of the process that he was due, and none of the constitutional concerns that this Court has previ-

---

11. The version of section 151 in effect at the time that the Assessor sent notices to Thompson is not identical to the current version of the statute. *See supra* note 5 of the majority opinion.

ously expressed in conjunction with lack of personal jurisdiction are present. I am not persuaded that the record before us supports the exception carved out by the Court.

[¶ 34] Thompson has not presented a facial challenge to the statute nor has he demonstrated a failure of due process. Although a collateral attack on an assessor's final determination of residency may be permissible in circumstances involving gross departures from due process requirements, I would hold that Thompson has conceded his status as a Maine resident and waived his right to challenge the Assessor's determination on that ground by failing to request a reconsideration after earlier asserting his residence and after receiving notice of the assessments against him. Such reasoning comports with the well-established preference for the finality of administrative decisions based on "principles of judicial economy, the stability of final administrative rulings, and fairness to litigants." *Maine Cent. R.R. Co. v. Town of Dexter*, 588 A.2d 289, 292 (Me.1991). Accordingly, I would affirm the judgment of the Superior Court.