2009 ME 60

**Robert W. BRITTON et al.**

v.

**DEPARTMENT OF CONSERVATION
et al.**

Supreme Judicial Court of Maine.

Argued: May 21, 2009.
Decided: June 18, 2009.
Revised: July 9, 2009.

Gerald F. Petruccelli, Esq. (orally), Bruce A. McGlauflin, Esq., Petruccelli, Martin & Haddow, LLP, Portland, ME, for Eleanor F. Britton and Robert W. Britton.

Mark G. Furey, Esq. (orally), Thompson, Bull, Furey, Bass & MacColl, Portland, ME, for Daniel P. Donnell and the Donnell Realty Trust.

Janet T. Mills, Atty. Gen., Amy B. Mills, Asst. Atty. Gen., Gerald D. Reid, Asst. Atty. Gen. (orally), Augusta, ME, for the Maine Department of Conservation.

Panel: SAUFLEY, C.J., CLIFFORD, LEVY, SILVER, MEAD, and GORMAN, JJ.

GORMAN, J.

[¶ 1]  Robert W. Britton and Eleanor F. Britton appeal from a judgment of the Superior Court (York County, *Brennan, J.)* denying their request for equitable relief and damages for what they allege to be an infringement of their riparian rights by their neighbors, Daniel P. Donnell and the Trustees of the Donnell Realty Trust (Donnells), who own and operate two wharves, one of which extends forty-eight feet in front of the Brittons' property. The Donnells cross-appeal arguing that the Brittons should have been collaterally estopped from claiming any infringement of their rights because, they allege, the Bureau of Parks & Lands (Bureau), a division of the Maine Department of Conservation, already had decided that the wharves do not unreasonably interfere with the Brittons' riparian rights when issuing both Donnell and the Trust leases to operate the wharves on submerged lands.[1]  The Donnells also argue that they had acquired the submerged lands in front of the Brittons' property by adverse possession, prescription, or abandonment.

[¶ 2]  In deciding this case, the court applied the Submerged and Intertidal Lands Act (SILA), 12 M.R.S. § 1862 (2008), and concluded that the Brittons were not entitled to injunctive or declaratory relief or damages because Varrell Wharf, which extends in front of the Brittons' property, did not unreasonably interfere with their riparian rights. SILA governs an administrative program that authorizes the State to lease its submerged lands for compensation after determining that the proposed lease will not unreasonably interfere with such things as navigation, fishing, existing marine uses, and the ingress and egress of riparian owners in the area. 12 M.R.S. § 1862(2)(A)(6).

[¶ 3]  Because SILA and its unreasonable interference standard are not relevant to the private property dispute between the Brittons and the Donnells, we vacate and remand for a determination on the Brittons' claims that Varrell Wharf constitutes a nuisance and violates the Wharves and Weirs Act, 38 M.R.S. § 1026 (2008).[2]

## I.  FACTUAL HISTORY

[¶ 4]  In 1975, the Brittons bought waterfront property in York Harbor located

---

1.  Varrell Wharf is the wharf that extends in front of the Brittons' property; it is located in front of the property owned by Donnell Realty Trust. The Brittons argued that the other wharf, Simpsons Wharf, which is located in front of Daniel Donnell's property, also infringes upon their riparian rights because it provides an inadequate setback distance from the Varrell Wharf floats. Because Simpsons Wharf does not extend beyond Daniel Donnell's property, and because Daniel Donnell's deed specifically affords him the right to dock boats off of Simpsons Wharf, we only address the Brittons' challenge to Varrell Wharf.

2.  The Wharves and Weirs Act states, in relevant part:

> No fish weir, trap or wharf shall be erected or maintained in tidewaters below low-water mark in front of the shore or flats of another without the owner's consent, under a penalty of $50 for each offense, to be recovered in a civil action by the owner of said shore or flats.

between two parcels owned by the Donnells. Daniel Donnell owns the property abutting the southeastern portion of the Brittons' property, and the Donnell Realty Trust owns a lot abutting the northwestern portion.

[¶ 5] The Donnells have owned and operated Simpsons Wharf and Varrell Wharf for several decades; both wharves have boating slips that the Donnells rent to commercial fishermen and recreational boaters. Simpsons Wharf is located to the south of the Brittons' property. Varrell Wharf is located to the north. At issue in this case is a forty-eight-foot section of Varrell Wharf that extends directly across the Brittons' frontage, parallel to their property line. This section was built between 1950 and 1955; the predecessor in title to the Brittons' property neither objected nor expressly consented to its installation.

■ [¶ 6] In order to reach the navigable waters in front of their property, the Brittons would have to maneuver a boat through a forty-one-foot gap between Simpsons Wharf and the Varrell Wharf extension; when boats are docked at the wharves, this gap is even narrower. Since 1987, the Brittons have objected to the forty-eight-foot extension in front of their property asserting that it interferes with their riparian rights of ingress and egress.[3]

[¶ 7] This litigation began in 2005 after the Trust entered into a submerged land lease with the Bureau pursuant to SILA; the lease entitled the Trust to continue occupying the submerged lands under Varrell Wharf.[4] The Brittons participated in the lease negotiations, arguing that Varrell Wharf unreasonably interfered with the potential uses of their intertidal lands including their ability to access the York River or to construct a pier from their property. The Bureau disagreed and approved the lease on January 31, 2005, finding specifically that Varrell Wharf did not unreasonably interfere with the Brittons' riparian rights.

## II. PROCEDURAL HISTORY

[¶ 8] The Brittons filed the present complaint against the Maine Department of Conservation and the Donnells, pursuant to M.R. Civ. P. 80C, requesting a review of the Bureau's issuance of the submerged land lease to the Trust. The Brittons also alleged independent claims for nuisance and violation of the Wharves and Weirs Act and they sought declaratory and injunctive relief. The Donnells and the Department of Conservation argued that the Brittons should be precluded from bringing their complaint because the Bureau already had decided that Varrell Wharf did not unreasonably interfere with the Brittons' riparian rights.

---

38 M.R.S. § 1026 (2008).

3. The Donnells argue, among other things, that the deeds in the Brittons' chain of title indicate that the Brittons' property does not extend to the low-water mark, giving them no private riparian right to cross the flats to reach the York River. The court correctly interpreted the Brittons' 1999 deed, which defines their property as extending "to the York River," as providing conclusive proof that the Brittons own to the low-water mark. *See Hathaway v. Rancourt*, 409 A.2d 209, 213 (Me.1979) (stating that prior deeds in a chain

of title can be used to interpret the current owner's deed *when* the owner's deed is ambiguous) (emphasis added).

4. For the Donnells and others who already had structures on the submerged lands when the Submerged and Intertidal Lands Act's (SILA) leasing program took effect in 1975, the State granted them constructive easements to continue using the land for thirty years before having to apply to the State for a lease. *See Great Cove Boat Club v. Bureau of Pub. Lands*, 672 A.2d 91, 92–93 (Me.1996).

[¶ 9] The court dismissed the Rule 80C appeal because it was not filed within thirty days after the Brittons' attorney received notice of the final leasing decision, as required by M.R. Civ. P. 80C and 5 M.R.S. § 11002(3) (2008). Subsequently, the Donnells filed a motion for summary judgment arguing, among other things, that the Brittons' complaint is a veiled collateral attack on the Bureau's decision to issue a lease to the Donnells, and that the Wharves and Weirs Act claim is barred by the statute of limitations.

■ [¶ 10] Denying summary judgment to the Donnells, the court determined that the common law of riparian rights—and not the public trust doctrine[5]—governs this matter. Thus, the court concluded that the Brittons were not precluded from seeking declaratory and injunctive relief against the Donnells because the Trust's lease with the State does not protect it from complaints alleging infringement of private property rights. The court also found that the statute of limitations did not bar the Wharves and Weirs Act claim or any other claim flowing from the continued use of the area in front of the Brittons' property.

■ [¶ 11] The case proceeded to a bench trial. In ruling against the Brittons, the court applied SILA's unreasonable interference standard and found that because the allotted forty-one feet of space between the wharves was sufficient to permit the Brittons to land a small boat, the interference with the Brittons' riparian rights was not unreasonable. Although the court found that the Donnells never obtained express consent from the Brittons that authorized them to operate Varrell Wharf in front of the Brittons' property, the court concluded that the Brittons had failed to prove a violation of the Wharves and Weirs Act because Varrell Wharf did not unreasonably interfere with the Brittons' riparian rights. The court did not rule on the Donnells' affirmative defenses, including their claim that the Brittons' riparian rights were extinguished by adverse possession, prescription, or abandonment, laches, or coming to the nuisance.[6]

## II. DISCUSSION

### A. Rule 80C Appeal

■ [¶ 12] The Brittons argue that the court should not have dismissed their Rule 80C appeal as time-barred. A petition requesting a review of a final agency action must be filed within thirty days after receipt of notice. *See* M.R. Civ. P. 80(C); 5 M.R.S. § 11002(3). The appeal of the Bureau's decision in this case was untimely because it was not filed within thirty days after the Brittons' attorney's office

---

5. Pursuant to the public trust doctrine, submerged lands are held by the State in trust for the public for uses such as fishing, fowling, and navigation. *See Norton v. Town of Long Island*, 2005 ME 109, ¶ 21, 883 A.2d 889, 896.

6. However, the court did find that the Donnells have occupied the submerged lands in front of the Brittons' property under the perception and belief that they were legally authorized to do so and not under a claim of right hostile to the Brittons' riparian rights. The Donnells contend that the court erred as a matter of law in making this finding, arguing that hostile intent is no longer an element

of adverse possession. We do not address this specific argument, but note that the submerged lands under Varrell Wharf are owned by the State. A party cannot obtain rights against the State by adverse possession, prescription, or abandonment absent express statutory authorization. *See United States v. Burrill*, 107 Me. 382, 385–86, 78 A. 568, 569 (1910). No such statutory authorization exists here. We do not opine regarding the applicability of adverse possession or similar doctrines in the context of the allegedly competing private rights.

received the decision. *See City of Lewiston v. Me. State Employees Ass'n,* 638 A.2d 739, 741 (Me.1994) (stating that statutory periods of appeal are not subject to court-ordered enlargement of time). Therefore, the court correctly dismissed the appeal as untimely.

### B. Summary Judgment

#### 1. Collateral Estoppel

■ [¶ 13] In denying the Donnells' summary judgment motion, the court concluded that the Bureau's lease with the Trust was issued pursuant to the public trust doctrine, and therefore, did not collaterally estop the Brittons from bringing a complaint alleging an infringement of their private rights against the Donnells.

■ [¶ 14] The effect of a prior judgment, including final decisions of administrative bodies, on a present court action is a question of law that we review de novo. *State v. Thompson,* 2008 ME 166, ¶ 8, 958 A.2d 887, 890–91; *see also Cline v. Me. Coast Nordic,* 1999 ME 72, ¶ 9, 728 A.2d 686, 688 ("Final adjudication in an administrative proceeding before a quasijudicial municipal body has the same preclusion effect as a final adjudication in a former court proceeding." (quotation marks omitted)).

■ [¶ 15] The administrative decision involved here—the issuance of the lease to the Trust—was made pursuant to SILA. Enacted in 1975, SILA gives the director of the Bureau authority to "lease, for a term of years not exceeding 30 and with

conditions the director considers reasonable, the right to dredge, fill or erect permanent ... wharves, docks, pilings, moorings or other permanent structures on submerged and intertidal land owned by the State." 12 M.R.S. § 1862(2). SILA is an extension of the State's long-standing authority, pursuant to the public trust doctrine, to reasonably interfere with a coastal property owner's riparian rights in order to protect the public's rights to fishing, fowling, and navigation. *Conservation Law Found., Inc. v. Dep't of Envtl. Prot.,* 2003 ME 62, ¶ 36, 823 A.2d 551, 563; *see also Great Cove Boat Club v. Bureau of Pub. Lands,* 672 A.2d 91, 95 (Me.1996) (concluding that the common law rights of riparian property owners "are subject to reasonable regulation by the State in the exercise of its public trust rights").

[¶ 16] Before granting a submerged land lease, the Bureau must find, among other things, that the lease will not unreasonably interfere with the ingress and egress of riparian owners. 12 M.R.S. § 1862(2)(A)(6)(d);[7] *see also* L.D. 910 (114th Legis. 1989). In granting the Donnells' lease, the Bureau found that Varrell Wharf did not unreasonably interfere with the Brittons' rights of ingress and egress. The Bureau's final decision states: "even with vessels berthed at each side [of the wharves], there was sufficient space for others with similarly sized vessels exercising reasonable care to safely navigate the area as they have for many years." Although this finding is specific to the Brittons' property, it in no way resolves the

---

**7.** The director of the Bureau may grant a submerged land lease if the director finds that the proposed lease:

    **(a)** Will not unreasonably interfere with navigation;

    **(b)** Will not unreasonably interfere with fishing or other existing marine uses of the area;

    **(c)** Will not unreasonably diminish the availability of services and facilities necessary for commercial marine activities; and

    **(d)** Will not unreasonably interfere with ingress and egress of riparian owners.

12 M.R.S. § 1862(2)(A)(6) (2008).

private property dispute between the two parties.

█ [¶ 17] SILA grants the State authority to protect the public's rights to open waters; it does not give the State authority to infringe upon one riparian owner's rights in order to allow an abutting riparian owner to operate a commercial enterprise. Therefore, the court correctly determined that the Trust's lease with the State to operate Varrell Wharf did not preclude the Brittons' complaint.[8]

### 2. Statute of Limitations

█ [¶ 18] The Donnells also argued in their motion for summary judgment that the six-year statute of limitations barred the Brittons from bringing a claim alleging a violation of the Wharves and Weirs Act because the section of Varrell Wharf in front of the Brittons' property has been there for more than fifty years.

█ [¶ 19] When there are no factual disputes, we review a court's interpretation of the statute of limitations directly for errors of law. *Stromberg–Carlson Corp. v. State Tax Assessor*, 2001 ME 11, ¶ 5, 765 A.2d 566, 567–68. "All civil actions shall be commenced within 6 years after the cause of action accrues and not afterwards, . . . except as otherwise specially provided." 14 M.R.S. § 752 (2008).

[¶ 20] Here, the statute itself contains a special provision. It states, "[n]o fish weir, trap or wharf shall be erected or *maintained* in tidewaters below low-water mark in front of the shore or flats of another . . . ." 38 M.R.S. § 1026 (emphasis

added). Based on the statutory language, every day that Varrell Wharf is maintained serves as a new and separate violation of the statute. Therefore, the court correctly concluded that any claims alleging a continued interference with the Brittons' riparian rights, which includes the Wharves and Weirs Act, were not time-barred.

### C. Final Judgment

[¶ 21] We now proceed to the court's final judgment and a discussion about the proper laws to apply to the Brittons' claims.

### 1. Wharves and Weirs Act

█ [¶ 22] In 1892, when dealing with facts similar to those presented in this case, we held, "[t]he presumption is that an owner of land fronting on the sea has, as such owner, the right of egress and ingress from and to his land over deep water for the whole width of such frontage." *Proprietors of Me. Wharf v. Proprietors of Customhouse Wharf*, 85 Me. 175, 178–79, 27 A. 93, 94 (1892). The Wharves and Weirs Act protects a waterfront owner's riparian rights of egress and ingress against infringement by private individuals by requiring a party who wishes to erect or maintain a wharf or fish weir in front of the shore of another to receive consent from the owner of that shorefront property or a face a fine of $50 for each offense. *See* 38 M.R.S. § 1026. Originally enacted in 1885, *see* P.L. 1972, ch. 287, the Wharves and Weirs Act remains good law, despite the enactment of SILA.

---

8. The United States Army Corps of Engineers (USACE) also had issued Daniel Donnell a permit for Varrell Wharf, and Donnell and the Trust argued that this federal permit, like the Trust's lease with the State, precluded the Brittons' claims. The USACE permit does not resolve this case for the same reasons that the State's lease with the Trust does not re-solve it. Although the federal government has preserved some rights to use submerged lands for national defense and may interfere with riparian rights accordingly, *see Norton v. Town of Long Island*, 2005 ME 109, ¶ 33, 883 A.2d 889, 899 n.6, the USACE does not have authority to transfer private rights from one riparian owner to another.

■ [¶ 23] Here, the court correctly found that the Brittons did not consent to the continued operation of Varrell Wharf in front of their property, but that the lack of consent alone does not constitute a violation. The court then considered the nature of the interference to determine if consent was required, referencing *Sawyer v. Beal*, where we concluded that the owner of a small island could not prevent the installation of any fish weir, trap, or wharf within his line of vision from any spot on the island by simply withholding consent. 97 Me. 356, 358–59, 54 A. 848, 848–49 (1903). We reasoned that the Wharves and Weirs Act applies only when the alleged infringements are:

> so situated or are so near the shore of another as to injure or injuriously affect the latter in the enjoyment of his rights as such owner, as for instance by preventing, to some extent at least, fish from coming to the weir of the shore owners, if he has one, or by injuring his weir privilege, or by obstructing access by sea to his land, or in some other way.

*Id.* at 358, 54 A. at 848–49.

[¶ 24] In *Sawyer*, the distance between the nearest portions of the island and of the weir, at low-water mark, was 528 feet, leaving sufficient space for vessels of considerable size to get to and from navigable waters. *Id.* at 357, 54 A. at 848. In this case, by contrast, the Donnells' wharf is much closer to the low-water mark in front of the Brittons' property, and the configuration of the two wharves limits the Brittons' access to navigable waters in front of their property by requiring them to navigate through the forty-one-foot gap.

[¶ 25] In order to determine whether Varrell Wharf constitutes a violation of the Wharves and Weirs Act, the court must consider all relevant facts and then decide whether the wharf is "so situated or so near the shore" of the Brittons' property as to injure or injuriously affect the Brittons in the enjoyment of their riparian rights. We remand on this issue.[9]

## 2. Nuisance

[¶ 26] The court did not specifically address the Brittons' claims alleging common law and statutory nuisance. We infer from the judgment that the court found against the Brittons on their nuisance claims by again applying the reasonable use standard of SILA. For the same reasons as stated above, we also remand for further hearing and fact-finding on the Brittons' claims alleging nuisance.[10]

## 3. Affirmative Defenses

[¶ 27] Finally, on remand, the court should also address all of the Donnells' affirmative defenses.

The entry is:

Judgment dismissing the Rule 80C appeal affirmed. Remainder of judgment vacated. Remanded to Superior Court for

---

9. Because, as we have noted, this case is about a property dispute between the Donnells and the Brittons, we see no reason why the Department of Conservation should remain a party on remand. Our decisions, affirming the Rule 80C dismissal and the court's determination that the finding in the submerged land lease does not preclude the Brittons' claims, effectively conclude the State's involvement.

10. In concluding that any claims alleging a continued interference with the Brittons' riparian rights were not time-barred, the court correctly addressed the Donnells' statute of limitations defense to the nuisance claims. Because the wharf is not permanent and because a court could abate by injunction, the statute of limitations would not bar the Brittons' nuisance claims. *See Jacques v. Pioneer Plastics*, 676 A.2d 504, 507–08 (Me.1996).

 

further proceedings consistent with this opinion.