ENTERED NOV 0 7 2014

STATE OF MAINE
CUMBERLAND, ss

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-12-533
5/9/2014

KAREN CORMIER,

    Plaintiff

v.

          ORDER

GENESIS HEALTHCARE LLC,
et al,

    Defendants

STATE OF MAINE
Cumberland, ss, Clerk's Office

MAY 0 9 2014

RECEIVED

Before the court is a motion by defendants Genesis HealthCare LLC and Scarborough Operations LLC for summary judgment.

Summary Judgment

Summary judgment should be granted if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. In considering a motion for summary judgment, the court is required to consider only the portions of the record referred to and the material facts set forth in the parties' Rule 56(h) statements. E.g., Johnson v. McNeil, 2002 ME 99 ¶ 8, 800 A.2d 702. The facts must be considered in the light most favorable to the non-moving party. Id. Thus, for purposes of summary judgment, any factual disputes must be resolved against the movant. Nevertheless, when the facts offered by a party in opposition to summary judgment would not, if offered at trial, be sufficient to withstand a motion for judgment as a matter of law, summary judgment should be granted. Rodrigue v. Rodrigue, 1997 ME 99 ¶ 8, 694 A.2d 924.

Plaintiff Karen Cormier claims that she was terminated by defendants as a CNA at the Pine Point Nursing Facility in violation of the Maine Whistleblowers Protection Act because complaints she had made with respect to patient safety. For purposes of summary judgment, there is evidence that Cormier made various complaints relating to staffing to certain Pine Point supervisors during 2011. Thereafter, based on an incident that allegedly occurred on December 28, 2011 in which it was reported that Cormier had slapped a resident on the hand, Cormier was terminated.

To prevail on a claim under the Whistleblower's Protection Act, an employee must show that she engaged in a protected activity under the Act, that she experienced an adverse employment action, and that a causal connection existed between the protected activity and the adverse employment action. Currie v. Industrial Security Inc., 2007 ME 12 ¶ 12, 915 A.2d 400.

There are factual issues with respect to the incident that resulted in Cormier's termination. The alleged slap was described by a witness as the kind of light slap that might be given to a baby. Cormier originally provided a written statement that on December 28 a resident had become combative and that she had tried to hold the resident's hand to keep the resident from hitting her. At a later point, however, she informed the Director of Nursing that on December 28 she had not been assigned to the wing where the alleged incident had occurred.

Defendants' motion focuses on two other issues: (1) whether Cormier's complaints relating to staffing, construed in the light most favorable to Cormier as the party opposing summary judgment, constituted protected activity under the Whistleblower's Protection Act, 26 M.R.S. § 833; and (2) whether Cormier has submitted sufficient evidence of a causal link between the activity she contends was protected and her termination.

2

<u>Cormier's Staffing Complaints</u>

In considering the evidence that Cormier has submitted on this issue, it is first necessary to address certain challenges to admissibility. Cormier submitted two Rule 56(h)(2) statements in opposition to defendants' motion for summary judgment. The first, entitled "Plaintiff's Response to Defendant's Statement of Material Facts" (hereafter "Cormier SMF"), responded to the numbered paragraphs in defendants' Rule 56(h)(1) Statement. The second, entitled "Plaintiff's Statement of Material Facts," set forth the additional facts that Cormier contended created disputed issues for trial and is hereafter referred to as "Cormier SAMF."

A party opposing summary judgment may rely on affidavits, depositions, and answers to interrogatories to the extent that those affidavits, depositions, and interrogatory answers are based on personal knowledge and set forth "such facts as would be admissible in evidence." M.R.Civ.P. 56(e). In this case, statements in an affidavit from Cormier's counsel purporting to summarize documents obtained in discovery in another case involving Pine Point Center and contending that other cases have raised safety concerns relating to Pine Point constitute inadmissible hearsay that cannot demonstrate the existence of any factual dispute for trial in this case.[1] Moreover, counsel's references to alleged DHS findings in 2009[2] – when Cormier's only alleged complaints in this case occurred in 2011[3] – are not only inadmissible on grounds of hearsay but on grounds of relevance.

---

[1] <u>See</u> Loranger Affidavit ¶ 2, cited as the basis for Cormier SAMF ¶¶ 3 and 4. <u>See also</u> Loranger Affidavit ¶ 6, cited as the basis for Cormier SAMF ¶ 58.

[2] <u>Id.</u>

[3] Defendants' SMF ¶ 23 (admitted).

3

Counsel's complaints that certain documents were not produced by defendants – where no effort was made before the close of discovery to obtain the documents pursuant to Rule 26(g) and no application for relief under Rule 56(f) has been made – are similarly unavailing.[4]

Cormier worked on the evening shift at Pine Point, Defendants' SMF ¶ 20 (admitted), and defendants offered evidence that the minimum DHHS staffing requirements for the Pine Point facility called for a combined total of 6 direct care providers for the 58 residents in Pine Point's long term care unit and its skilled nursing care unit during the evening shift.[5] In response to that showing Cormier cites to unauthenticated documents, hearsay assertions, and unsupported argument in her counsel's affidavit – none of which are sufficient to raise a disputed issue of fact with respect to any alleged violations of the required staffing ratio.[6]

Cormier did not testify in her deposition that she made any complaints that the required staffing ratio had been violated but that she did make more general complaints about staffing to various supervisors at the Pine Point facility in 2011. Cormier Dep. 47-60, cited in Defendants SMF ¶ 33. She also testified that she mentioned patient safety in at least some of those complaints. Cormier Dep. 53. Although Cormier did not testify that she had explicitly mentioned patient safety in her other discussions on the subject of staffing, all of the questioning on that subject during her deposition began with a

---

[4] See Loranger Affidavit ¶ 3, cited as a basis for Cormier's complaint about discovery in Cormier SMF ¶ 10.

[5] See Defendants' SMF ¶¶ 6-10, citing Currier Affidavit ¶¶ 4-5 and Currier Ex. A (DHHS Regulations). Chapter 9.A.4, section A(2) of the DHHS regulations requires one direct care provider for every 10 residents on the evening shift. Direct care providers are defined to include CNAs, RNs, and LPNs. See Regulations Chapter 1, page 2.

[6] In disputing paragraphs 9 and 10 of defendants' SMF, Cormier relies heavily on inadmissible assertions in Loranger Affidavit ¶ 3. Cormier also relies on the inadmissible assertions in paragraph 3 of the Loranger Affidavit in her denials of defendants' SMF ¶¶ 11-15 and 17-19.

4

discussion of an interrogatory answer in which Cormier had linked her complaints about staffing to patient safety. Cormier Dep. 34-35, cited in Cormier SMF ¶ 36.

While many of Cormier's staffing complaints could alternatively be described as complaints about her workload, the summary judgment record must be construed in her favor. The court concludes that there is a factual dispute for trial as to whether Cormier made good faith reports as to what Cormier could reasonably have believed was a staffing condition or practice that created a risk to patient safety. Such reports would potentially constitute protected activities under the Whistleblowers Act, 26 M.R.S. § 833(1)(B).

## Causal Link

On the issue of whether there is a disputed issue for trial with respect to the existence of a causal link between Cormier's staffing complaints and her termination, Defendants have submitted affidavits from the two persons involved in the decision to terminate Cormier, Leslie Currier and Mary Norton. Currier and Norton's affidavits state that neither had been aware of any complaints that Cormier had made with respect to staffing at the Pine Point Facility at the time that a decision was made to terminate Cormier based on the slapping incident and on a review of Cormier's personnel file. Currier Affidavit ¶ 15; Norton Affidavit ¶ 3.

The only evidence that Cormier has offered to controvert that showing is (1) a statement in one of her interrogatory answers that she had made a staffing complaint to various supervisors including Currier and (2) employer policies that any unlawful conduct should be reported to supervisors and that staffing levels below regulatory minimums should be reported to Currier. Cormier SMF ¶¶ 58-59.

5

The problem with Cormier's interrogatory answer is that, when Cormier was subsequently directly asked at her deposition whether she had ever talked to Currier about staffing, she responded, "I did not, but other CNAs I were told did." Cormier Dep. 58, cited in Defendants' SMF ¶ 36. For the same reasons set forth by the Law Court is a line of cases beginning with Zip-Lube, Inc. v. Coastal Savings Bank, 1998 ME 81 ¶ 10, 709 A.2d 733, Cormier cannot create a disputed issue of fact by contradicting her own clear deposition testimony under oath.[7] While the Zip-Lube line of cases generally address instances where a party has attempted to contradict prior deposition testimony with a subsequent affidavit, the same principle applies here because a previous interrogatory answer, presumably drafted with the assistance of counsel, cannot serve to contradict Cormier's clear and unscripted answer at her deposition.

In this connection, it bears emphasis that the copy of Cormier's deposition that is annexed to the defendants' motion includes an errata sheet demonstrating that Cormier had the chance to review her deposition testimony and that she made several corrections. She did not correct her statement that she had never talked to Currier about staffing. Moreover, complaints made or concerns expressed by employees other than Cormier cannot supply the missing causal connection between staffing complaints made by Cormier and her termination.[8]

---

[7] Accord, State v. Thompson, 2008 ME 166 ¶ 22, 958 A.2d 887; Schindler v. Nilsen, 2001 ME 58 ¶ 9, 770 A.2d 638; Holden v. Weinschenk, 1998 ME 185 ¶ 12, 715 A.2d 915.

[8] In her opposition to summary judgment, Cormier repeatedly relies on issues raised in other lawsuits and concerns raised by other employees. See Loranger Affidavit ¶¶ 2, 6, cited in Cormier SAMF ¶¶ 3, 4, 58. In particular, Cormier emphasizes certain concerns raised by Registered Nurse Rosette Makon in a resignation letter produced by defendants in discovery. Cormier SAMF ¶¶ 23, 27. However, an employee cannot bring a whistleblower complaint based on reports made by other employees as to practices which those other employees may have believed created a risk to patient safety. See 26 M.R.S. § 833(1)(B).

6

Cormier's reliance on an inference that her staffing complaints may have been reported to Currier based on the existence of employer policies is also unavailing. First, in the absence of habit or practice evidence or any other evidence as to whether reports were actually made, it is doubtful that the mere existence of employer policies supports any inference that policies were followed in a given case. Second, even if such an inference were possible, the policies here cannot support such an inference.

The first policy relied on by Cormier is a policy that each employee shall report any conduct that is unlawful or in violation of the company's standards of conduct. Cormier Dep. Ex. H. There is no evidence that any of the staffing concerns or complaints made by Cormier involved conduct that was unlawful or in violation of the Company's standard of conduct.

The remaining policy relied on by Cormier is a policy that nursing supervisors or managers were required to report if the supervisors or managers discover or suspect a risk that staffing levels might fall below regulatory minimums. Currier Aff. ¶ 11. However, a review of the staffing complaints made by Cormier, according to her deposition testimony, demonstrates that Cormier never complained that staffing was falling below regulatory minimums. Cormier Dep. 47-60. Cormier's complaints were that on certain occasions there were not enough CNAs, and that the nurses were often too busy with other tasks to help the CNAs. E.g., Cormier Deposition 48, 50, 52.

There is no evidence that could support a finding that Cormier's complaints caused any Pine Point Supervisor to report that staffing levels could fall below regulatory minimums. Regardless of the content of Cormier's complaints, there is also no evidence that any Pine Point supervisor advised Currier that Cormier had raised staffing concerns or made staffing complaints.

7

The only factual assertions submitted by Cormier to controvert defendants' evidence that the decision to terminate Cormier was made without knowledge of her staffing complaints are based on the interrogatory answer and the employer policies discussed above. The court is not obliged to search the record to determine if there is some other evidence that could defeat summary judgment on this issue. Levine v. R.B.K. Caly Corp., 2001 ME 77 ¶ 9, 770 A.2d 653. Accordingly, Cormier has not demonstrated that there is a triable issue of fact as to the existence of a causal connection between the staffing complaints she made and defendants' decision to terminate her after the alleged slapping incident. See Pomales v. Cellulares Telefonica Inc., 447 F.3d 79, 85 (1st Cir. 2006) (to draw inference of causal connection from the chronological proximity of an employee's complaints and her termination, "there must be proof that the decisionmaker knew of the plaintiff's protected conduct when he or she decided to take the adverse employment action").

The entry shall be:

Defendants' motion for summary judgment is granted. The Clerk is directed to incorporate this order in the docket by reference pursuant to Rule 79(a).

Dated: May  9 , 2014

Thomas D. Warren
Justice, Superior Court

8

Cumberland County
205 Newbury Street, Ground Floor
Portland, ME 04101

PLAINTIFF'S ATTORNEY

GUY D LORANGER ESQ
LAW OFFICE OF GUY D LORANGER
ONE GRANNY SMITH COURT SUITE 3
OLD ORCHARD BEACH ME 04064

---

CLERK OF COURTS
Cumberland County
205 Newbury Street, Ground Floor
Portland, ME 04101

DEFENDANT'S COUNSEL

JAMES ERWIN ESQ
MICHELLE BUSH ESQ
PIERCE ATWOOD
254 COMMERCIAL STREET
PORTLAND ME 04101